**Ronald Lee MANEY, Plaintiff,**

**v.**

**Rudolph E. RATCLIFF et al., Defendants.**

**Civ. A. No. 75–C–1.**

United States District Court,
E. D. Wisconsin.

Sept. 3, 1975.

David A. Melnick, Milwaukee. Wis., for plaintiff.

Reuben W. Peterson, Jr., Milwaukee, Wis., for defendants Ratcliff and Welborn.

David M. Miller, Baton Rouge, La., for defendants Brown and Chaffin

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action challenging the defendants' use of the Federal Bureau of Investigation's National Crime Information Center (NCIC)[1] to locate and detain plaintiff so that he could be extradicted to Louisiana. The complaint is based on 42 U.S.C. § 1983, and subject matter jurisdiction is present under 28 U.S.C. § 1343. Various types of injunctive relief are requested, as well as both compensatory and punitive damages. Plaintiff Ronald Lee Maney has filed a motion for a temporary restraining order. All the defendants have moved to dismiss for improper venue, Rule 12(b) (3), Federal Rules of Civil Procedure, and for lack of personal jurisdiction, Rule 12(b)(2). Defendants Brown and Chaffin have further asserted that the complaint fails to state a claim as to them, Rule 12(b)(6).

### I.

The verified complaint states that plaintiff Ronald Lee Maney is a resident of the City of West Allis, Wisconsin, which is located within the Eastern District of Wisconsin. Defendants Rudolph E. Ratcliff and John Welborn are identified, respectively, as the Chief of Police of Baton Rouge, Louisiana, and a police officer for the Baton Rouge Police Department. Defendant Ossie Brown is the District Attorney for East Baton Parish, and defendant Richard Chaffin is identified as an Assistant District Attorney. It is alleged that all defendants, at least in their official capacities, reside in Baton Rouge, Louisiana. Portions of paragraphs IV, V, and VI of the complaint provide:

IV—"In April, 1974, the plaintiff * * * was arrested by City of Milwaukee Police for a minor traffic violation. Standard procedure requires a check of the NCIC system to see if the person who is under arrest is wanted by any other jurisdictions * * *. As a result of the NCIC check, it was found that Ronald Lee Maney was wanted by the authorities in Baton Rouge, Louisiana, for a felony narcotics charge. * * * Maney, was allowed to contact and retain * * * David A. Melnick * * * who appeared in Assistant District Attorney William Gardner's office the following day after the arrest. * * * Gardner indicated the procedure he would follow since Ronald Lee Maney would not waive extradiction, that procedure being since the charges were rather vague he, * * * Gardner, would write to the authorities in Baton Rouge, Louisiana, requesting that they immediately forward the paper work so that the process of extradiction could begin. At that time * * * Gardner set the matter down for two weeks to again appear in his office. Two weeks later, * * * Maney and his attorney * * * appeared in * * * Gardner's office at which time Mr. Gardner indicated the paper work had still not arrived and put the matter over for another two weeks indicating that if by that date nothing had come from Baton Rouge, Louisiana, he would release Ronald Lee Maney and decline prosecution. Two more weeks passed and Mr. Garnder

[1]. The F.B.I.'s National Crime Information Center commenced operations in January 1967. It provides a computerized information storage and retrieval system for the over 6,000 participating agencies that submit data. Some eight categories of information are used, including outstanding warrants, stolen vehicles, license plates, and firearms. Through the use of computer-to-computer interface, almost immediate access to information stored in the NCIC is available. The F.B.I. does not charge participants for using the system, and the information gathered and stored is considered the property of the agencies which submit it. As of November 1971, thirty states had on-line access to NCIC, and the major cities in the remaining states were also participants. See, *United States v. Mackey*, 387 F.Supp. 1121 (D.Nev.1975) ; NCIC—A Tribute to Cooperative Spirit, F.B.I. Law Enforcement Bulletin, Feb. 1972, at 2.

[sic] released Ronald Lee Maney from prosecution."

V—"In October, 1974, Ronald Lee Maney, was arrested by West Allis Police, in a matter dealing with registration of an automobile. Once again, the * * * police discovered by NCIC entry with regard to Ronald Lee Maney, indicating that he was a fugitive from justice. The * * * police allowed Ronald Lee Maney to make a telephone call whereupon he called his attorney * * * who discussed the matter with the police on the telephone and further discussed this matter with Lieutenant Schwigle * * * Lieutenant Schwigle indicated to Attorney Melnick that he had called down to Baton Rouge, Louisiana, after hearing what happened to Mr. Maney the first time with the Milwaukee Police Department. Lieutenant Schwigle indicated he talked with a policeman named McMillan who indicated that Sgt. John Welborn, of the Baton Rouge, Louisiana Police Department, was in charge of the case and would call Lieutenant Schwigle back. At approximately 9:00 o'clock P.M., October 22, 1974, Sgt. Welborn called Lieutenant Schwigle and indicated that Assistant District Attorney Richard Chaffin, of the Baton Rouge, Louisiana District Attorney's Office, was the prosecutor and had told Sgt. Welborn that they did not have enough evidence to extradite in April, 1974, but did discover evidence since April, 1974, and therefore they would extradite at this time. Whereupon Ronald Lee Maney was once again brought before Assistant District Attorney William Gardner who after reviewing all events in the matter called down to the District Attorney's office in Baton Rouge, Louisiana, in the presence of Mr. Maney, Mr. Melnick and two police officers from the West Allis, Wisconsin, police department. The Baton Rouge, Louisiana District Attorney's office indicated at that time that they did want Mr. Maney and that they would forward the paper work necessary to proceed on the extradition. Based upon that representation, Mr. Gardner did issue the necessary process and Mr. Maney was brought before the County Court of Milwaukee County, Wisconsin, whereupon the matter was adjourned thirty days pursuant to Statute, awaiting the necessary information and paper work from the authorities in Baton Rouge, Louisiana. Thirty days later Ronald Lee Maney and his attorney, David A. Melnick, appeared before the Honorable Carl E. Bjork, who after hearing that once again Baton Rouge, Louisiana, authorities failed to forward any materials whatsoever, with regard to the case against Ronald Lee Maney, dismissed the case immediately and released Mr. Maney from custody."

VI—"On December 31, 1974, Attorney David A. Melnick, received a telephone call from Mr. Maney indicating that he had been once again arrested on the basis of the NCIC entry that he was a fugitive from justice, this time in Plattsburgh, New York, which is the jurisdiction located nearest to the United States-Canadian border. According to the Plattsburgh Police, Mr. Maney had been arrested after his name was checked on the computer at the port of entry and is showed that he was wanted by the Baton Rouge, Louisiana, police department and was a fugitive from justice. Mr. Maney is being once again held in the Plattsburgh jail, awaiting the thirty day period to have the Baton Rouge, Louisiana, police forward the necessary papers for extradiction. Ronald Lee Maney has informed his attorney that he does not have any money to post bail and if he remains in jail away from work he will lose his job."

Following the filing of this action plaintiff's attorney telephoned Ava Assapouriam, the District Attorney for Clinton County, New York. Assapouriam indicated that he had been holding plaintiff in the Plattsburgh jail as a fugitive from justice based on the Louisiana NCIC entry, but that defendant

Chaffin had been telephoned and had indicated that extradition papers would not be forwarded. In light of this, Assapouriam did not file formal charges against plaintiff and released him on January 2, 1975.

A hearing was held on plaintiff's motion for a temporary restraining order on February 18, 1975. At the hearing, defendants Brown and Chaffin filed documents which had been submitted to the Governor of Louisiana, asking that he request the extradition of plaintiff from Wisconsin. Those documents included a copy of an arrest warrant and affidavit dated May 16, 1973, in which it was charged that Ronald Maney had feloniously distributed one ounce of marijuana on February 11, 1973, in violation of L.R.S. 40:966(A).[2]

## II.

Since there is no special venue statute for civil rights actions, 28 U.S.C. § 1391 (b) controls and reads as follows:

> "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

As none of the defendants reside in this district, venue is proper only if plaintiff's claim can be said to have arisen in the Eastern District of Wisconsin. *Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga. 1972).

The complaint details that on three occasions—in April, October, and December of 1974—plaintiff was arrested and detained by the police officers on the strength of the NCIC entry originating from Baton Rouge authorities. With respect to each occasion, it is further alleged that the defendants failed to forward any of the papers necessary for extradition of plaintiff. Each of the three instances constitutes a separable claim of a violation of plaintiff's right to be free from unreasonable police and prosecutorial conduct. It is reasonable, therefore, to consider where each of the three claims can be said to have arisen in order to determine whether venue is proper in this judicial district for any of them.

As used in 28 U.S.C. § 1391(b), "claim" means "the aggregate of operative facts giving rise to a right enforceable in the courts * * *." *Ryan v. Glenn*, 52 F.R.D. 185, 192 (N.D.Miss. 1971). See, *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187 (2d Cir. 1943); 1 Moore's Federal Practice, ¶ 0.142[5.–2], at 1423–1435 (2d ed. 1974). The operative facts of each of plaintiff's three claims include the presence of the Baton Rouge NCIC entry, an arrest and detention based on the entry, and the subsequent failure of the Baton Rouge authorities to forward extradition papers. While the defendants' alleged acts and omissions occurred in Louisiana, the arrests and detentions occurred in Wisconsin and New York. These injuries are part of the claims plaintiff seeks to litigate.

Section 1983 actions which contain allegations of constitutional deprivations caused by unlawful arrests and seizures are analogous to tort actions for false arrest and imprisonment. See, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Since § 1983 should be read against a background of tort law liability, *Pierson v. Ray*, 386 U.S. 547, 556–557, 87 S.Ct. 1213, 18 L.Ed. 2d 288 (1967); *Monroe v. Pape*, supra, 365 U.S. at 187, 81 S.Ct. 473, law governing where tort law claims arise is highly relevant for determining where claims under § 1983 should be ruled to have

---

2. None of the parties have formally informed the court whether the Governor of Louisiana requested extradition, nor has the court received written notice of what action the Governor of Wisconsin may have taken, if any.

An attorney for defendants Brown and Chaffin stated at the hearing that the fugitive from justice entry concerning plaintiff had been, at least temporarily, taken off the NCIC. No written representation of this has been filed, and the defendants did not offer any assurance that the entry would not be placed on the NCIC once again.

arisen. The traditional rule is that the claim or cause of action arises where the injury occurs, since until there is an injury an essential element of the cause of action is missing. See, *Miller v. Cousins Properties, Inc.*, 378 F.Supp. 711 (D.Vt. 1974); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252, 260 (E.D.Pa.1968); *Rosen v. Savant Instruments, Inc.*, 264 F.Supp. 232 (E.D.N.Y. 1967). Under the traditional tort law rule, therefore, plaintiffs first two claims arising out of events in April and October, arose in Wisconsin, while the third claim arose in New York.

Venue for the first two claims is properly laid in this district, since many of the operative facts giving rise to the claims occurred here. *Jimenez v. Pierce*, 315 F.Supp. 365 (S.D.N.Y.1970). The third claim, relating to events in New York in late December and early January, did not arise in this district and venue is therefore improper. Although transfer of that claim to an appropriate district in New York or Louisiana under 28 U.S.C. § 1404 would be permissible, at the hearing plaintiff indicated that he wished the third claim dismissed. Defendants' motion to dismiss for improper venue must, therefore, be denied as to the first two claims and granted as to the third claim.

### III.

All the defendants have filed motions to dismiss for lack of personal jurisdiction. Plaintiff has responded with the assertion that Wisconsin's long-arm statute is sufficient to furnish personal jurisdiction. Consideration of these motions requires, first, a decision on whether the long-arm statute can be applicable in an action of this nature, and secondly, whether the conduct of the defendants is sufficient to bring them within the long-arm statute.

A. *Applicability of Wisconsin's Long-Arm Statute*

■ Under Rule 4(d)(7), and Rule 4(e), Federal Rules of Civil Procedure, state long-arm statutes are incorporated into the federal rules, thereby making it the duty of a federal court to apply the long-arm statute of the state in which it sits. *Kirchen v. Orth*, 390 F.Supp. 313 (E.D.Wis.1975). Plaintiff has contended that § 262.05(4), Wis.Stats. (1973) (local injury; foreign act), is applicable.

Defendants' position that the long-arm statute is inapplicable is based on their contentions that the statute was not intended to apply to the use of the NCIC system by police and prosecutors, and that the "contacts" with Wisconsin were initiated for the purpose of enforcing Louisiana's criminal laws rather than for the defendants' economic self-benefit.

■■ This position must be rejected. Although the Wisconsin legislature may not have contemplated the application of the long-arm statute to the facts alleged in this action, in the absence of any statutory provision or legislative history forbidding the statute's application, and so long as the facts are within the statute's language, the novelty of the factual situation is not a sufficient basis for ruling that the long-arm statute is inapplicable. Moreover, nothing in the long-arm statute makes the motive for a defendant's activities determinative of the statute's application. If the defendants' actions fall within the language of the long-arm statute, and if they constitute sufficient "minimum contacts * * * such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), then personal jurisdiction may be exercised over them.

B. *Jurisdiction Over Defendants*

Section 262.05(4), Wis.Stats. (1973), provides:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an

action pursuant to s. 262.06 under any of the following circumstances:

\* \* \* \* \* \*

"(4) Local injury; foreign act. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury either:

"(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

Since the Wisconsin court has not authoritatively construed § 262.05(4), the revision notes of G. W. Foster, Jr., contained in the pocket part of 30 W.S.A., are relevant here. *McCalla v. A. J. Industries, Inc.*, 352 F.Supp. 544 (E.D. Wis.1973); *McPhee v. Simonds Saw and Steel Co.*, 294 F.Supp. 779 (W.D.Wis. 1969); *Pavalon v. Fishman*, 30 Wis.2d 228, 140 N.W.2d 263 (1966); *Flambeau Plastics Corp. v. King Bee Mfg. Co.*, 24 Wis.2d 459, 129 N.W.2d 237 (1964). At page 42 of the notes, Foster states that under § 262.05(4)—

"Three jurisdictional facts are required by this subsection: (i) an act or omission outside the state by the defendant or his agent; (ii) an injury to person or property within the state which is claimed to arise out of the foreign act or omission; and (iii) some additional contact, not necessarily related to the injury sued on, which links the defendant to the state."

Of the three requisites set forth by Foster, the second—an injury to person—is present here. The verified allegations that plaintiff was twice arrested and held on the strength of the Baton Rouge NCIC entry are sufficient to establish the "local injury."

■ The first requisite—"an act or omission outside the state by the defendant or his agent"—is also present. While District Attorney Brown and Chief of Police Ratcliff have argued that the complaint alleges no conduct by them, under Wisconsin law personal jurisdiction can be acquired over a principal for the acts of his agents. See, § 262.03(3), Wis. Stats. (1973); [3] *Pavalon v. Fishman*, supra. There has been no contention that the NCIC request was not initially entered by agents of defendant Ratcliff, nor that defendant Brown and his agents were not responsible for taking the request off. In light of this, defendants Ratcliff and Brown may properly be held responsible for the acts and omissions of their agents and employees.

The third requirement—"some additional contact, not necessarily related to the injury sued on, which links the defendant to the state"—is intended to embody the statute's requirement of "[s]olicitation or service activities * * carried on within this state by or on behalf of the defendant. § 262.05(4)(a), Wis.Stats. (1973). The following facts are sufficient to satisfy this requirement: (1) the continuous solicitation of plaintiff's arrest by means of the NCIC; (2) Welborn's October 22 telephone call to Lieutenant Schwigle of the West Allis police; (3) the representation made by the District Attorney's office to Assistant District Attorney William Gardner that extradition was desired and that the necessary papers would be sent; and (4) a telegram sent by Welborn to the West Allis police on October 22 requesting that plaintiff be arrested and Welborn notified when this was accomplished.

In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283

---

3. " 'Defendant' means the person named as a defendant in a civil action, and where in this chapter acts of the defendant are referred to, the reference attributes to the defendant any person's acts for which acts the defendant is legally responsible. In determining for jurisdiction purposes the defendant's legal responsibility for the acts of another, the substantive liability of the defendant to the plaintiff is irrelevant."

(1958), the Court emphasized that the exercise of personal jurisdiction over nonresident defendants was limited by the principle that " * * * it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." The conduct of the agents of defendants Ratcliff and Brown was a sufficient invocation of Wisconsin law to make exercise of personal jurisdiction over them permissible.

Personal jurisdiction also exists over defendants Chaffin and Welborn under the long-arm statute. The verified complaint, together with the affidavits of Chaffin and Schwigle, make it evident that Chaffin was the Assistant District Attorney in charge of narcotics cases. Further, Chaffin's message that the District Attorney's office desired to have plaintiff extradicted resulted in plaintiff being held by the West Allis police and ultimately prosecuted as a fugitive from justice under § 976.03(13), Wis.Stats. (1973).[4] Defendant Welborn not only telephoned Schwigle and relayed Chaffin's message, but also sent the telegram which was attached to the criminal complaint by which plaintiff was charged.

The requirements of § 262.05(4) are satisfied in this action, and denial of defendants' motions to dismiss will not infringe their rights to due process. *Hanson v. Denckla,* supra.

## IV.

Defendants Brown and Chaffin have moved to dismiss the complaint for failure to state a claim, Rule 12(b)(6), F.R. Civ.P., both of them asserting prosecutorial immunity and defendant Brown contending that the complaint fails to allege any conduct by him.

Immunity from damages in an action under § 1983 has been established by the Supreme Court with respect to legislators, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); judges, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); state executive officers, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); and school board members, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The considerations giving rise to these immunity doctrines are that a public official who exercises discretion should not have to fear personal monetary liability for his errors, and that fear of having to defend damage actions and of being held liable in damages would deter qualified persons from seeking and accepting public office.

██ Although the Supreme Court has not as yet dealt with the question of prosecutorial immunity in § 1983 actions, the rule in this circuit is that prosecutors do enjoy an immunity from damages. *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39

4. "(13) Arrest prior to requisition. Whenever any person within this state shall be charged on the oath of any credible person before any judge of this state with the commission of any crime in any other state and, except in cases arising under sub. (6), with having fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of his bail, probation or parole, or whenever complaint shall have been made before any judge in this state setting forth on the affidavit of any credible person in another state that a crime has been committed in such other state and that the accused has been charged in such state with the commission of the crime, and, except in cases arising under sub. (6), has fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of his bail, probation or parole, and is believed to be in this state, the judge shall issue a warrant directed to any peace officer commanding him to apprehend the person named therein, wherever he may be found in this state, and to bring him before the same or any other judge or court who or which may be available in or convenient of access to the place where the arrest may be made, to answer the charge or complaint and affidavit; and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant."

L.Ed.2d 471 (1974). While the motive of a prosecutor is irrelevant in determining the scope of his immunity, *Hampton v. City of Chicago,* supra, at 608, the immunity only extends to conduct which can be "described as 'quasi-judicial' as opposed to investigatory activities normally performed by laymen, such as police officers." *Hampton v. City of Chicago,* supra, at 608. Thus, in *Hampton,* the Court held that planning and executing a raid was not conduct with the prosecutor's "quasi-judicial" role, and that the defendant prosecutors had no immunity from damages. By contract, in *Tyler v. Witkowski,* 511 F.2d 449 (7th Cir. 1975), the prosecutors' conduct of deciding whether to drop a charge because of insufficient evidence was held to be conduct within the "quasi-judicial" prosecutorial function. Similarly, *Boyd v. Adams,* 513 F.2d 83 (7th Cir. 1975), held that dismissing a criminal charge in return for a release of liability was conduct covered by the defendants' prosecutorial immunity. *Boyd* further held that prosecutors enjoy no immunity whatsoever from injunctive relief.

 Defendant Chaffin has contended that the decision whether to extradite is within the traditional prosecutorial function, since it is based on a discretionary balancing of considerations such as the expense involved, the severity of the crime, availability of witnesses, the merits of the case, and the like. While the decision of whether to extradite is within the "quasi-judicial" function of a prosecutor, the complaint here can fairly be read to allege that this decision was made in April 1974 after Assistant District Attorney William Gardner wrote the Baton Rouge authorities and requested that they forward the paperwork.

After deciding not to extradite, the NCIC entry was nevertheless left on the system, resulting in the arrest of plaintiff in October. The conduct of leaving the entry on the NCIC system after having decided not to extradite plaintiff is not within the prosecutorial function and is outside the scope of prosecutorial immunity. *Hampton v. City of Chicago,* supra. At this stage of the action, all of the conduct which may be attributed to defendant Chaffin cannot be held to be cloaked by the immunity doctrine, and his claim of prosecutorial immunity must be rejected.

 In *Adams v. Pate,* 445 F.2d 105, 107 n. 2 (7th Cir. 1971), the Court stated:

"Where monetary damages, as distinguished from equitable relief, is sought under the provisions of the Civil Rights Act the doctrine of respondeat superior does not apply; *personal involvement* of the defendant is required. [Citation omitted.]" (Emphasis added.)

See, *Wood v. Breier,* 66 F.R.D. 8, 10–11 (E.D.Wis.1975). The complaint herein contains no allegations of personal involvement by defendant Brown. Indeed, his name appears only in the caption of the complaint. *Adams,* therefore, requires a dismissal of the complaint against defendant Brown insofar as it seeks damages from him.[5]

### V.

Plaintiff's motion seeks to have the Court order that during the pendency of this action, the defendants, together with their agents, servants, employers, and employees, are (1) restrained from prosecuting any action which led to the NCIC entry concerning plaintiff, and (2) are

---

5. The complaint also fails to allege any personal involvement of defendant Ratcliff. Further, Ratcliff has submitted an affidavit in which it is stated that he resigned as Chief of Police on August 8, 1974. Since defendant Ratcliff has not filed a motion to dismiss pursuant to Rule 12(b)(6) or for summary judgment under Rule 56, plaintiff has not been required to respond to the questions of whether the damage claim against Ratcliff is supportable and whether Ratcliff should remain a party for the purpose of injunctive relief. It would, therefore, be inappropriate for the Court to deal with these questions *sua sponte. California Diversified Promotions, Inc. v. Musick,* 505 F.2d 278 (9th Cir. 1974).

required to take the fugitive from justice entry off the NCIC. The motion, denominated as "Motion for Temporary Restraining Order," was filed on January 3, 1975. On January 14, 1975, the Court mailed a notice which scheduled a hearing on the motion for February 18, 1975, and required any opposing party to file an answering brief by February 5, 1975. The defendants thereafter filed the motions to dismiss discussed above, but did not file any briefs specifically addressing the issue of whether plaintiff's motion should be granted. Moreover, after the hearing, no defendant filed any briefs opposing plaintiff's motion. However, the statements of the defendants' attorneys made at the February 18 hearing indicated that the defendants had not consented to plaintiff's motion being granted.

Although the motion is captioned "Motion for Temporary Restraining Order," the requested order would be of indefinite and potentially unlimited duration. Since defendants have had a full opportunity to be heard and to submit briefs and affidavits in opposition, no harm will befall them by treating plaintiff's motion as one for a preliminary injunction. *Sampson v. Murray,* 415 U.S. 61, 84–88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

### A. *Mootness*

An initial problem that must be dealt with is whether the request for an order taking the NCIC entry off has become moot. As stated above (see page 766, footnote 2), at the February 18 hearing, one of defendants' attorneys orally indicated that the fugitive from justice entry concerning plaintiff had been taken off the NCIC. Defendants have not filed anything with the court in confirmation of this. Further, no representation was made at the hearing, or subsequent to it, that the entry would not be placed back on the NCIC at some future point in time.

In these circumstances, it is evident that the request for an order requiring the defendants to take the fugitive from justice entry off is not moot. " * * * [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., [it] does not make the case moot. * * * The defendant is free to return to his old ways. * *" (Citations omitted.) *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). See, *Allee v. Medrano,* 416 U.S. 802, 810–811, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *N.L.R.B. v. Raytheon,* 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970); *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 202–204, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); *Gray v. Sanders,* 372 U.S. 368, 375–376, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29 (1944); Hart and Wechsler's, *The Federal Courts and The Federal System,* at 110 (2d ed. 1973). Further, "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. * * * The purpose of an injunction is to prevent future violations * * *." (Citations omitted.) *United States v. W. T. Grant Co.,* supra, 345 U.S. at 633, 73 S.Ct. at 897. There does exist here "some cognizable danger of recurrent violation" of plaintiff's rights, *United States v. W. T. Grant Co.,* supra, at 633, 73 S.Ct. at 898.

### B. *Abstention*

Plaintiff's request for an order restraining a pending criminal prosecution requires discussion of the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971),[6] and its progeny: *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Hicks v.*

---

6. Companion cases to *Younger* were *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 5764, 27 L.Ed.2d 688 (1971); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Byrne v. Karalexis,* 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

*Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). See also, *Ellis v. Dyson,* 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Mitchum v. Foster,* 407 U.S. 225, 92 S. Ct. 2151, 32 L.Ed.2d 705 (1972). The basic principle of this doctrine is that—

" * * * in the absence of exceptional circumstances creating a threat of irreparable injury 'both great and immediate,' a federal court must not intervene by way of either injunction or declaratory judgment in a pending state criminal prosecution." *Kugler v. Helfant,* supra, 421 U.S. at 123, 95 S.Ct. at 1530.

Federal intervention is possible only where there is a showing of bad faith or harassment by the state prosecuting officials, where the state law to be applied in the criminal proceedings is flagrantly and patently unconstitutional, or where there exist similar extraordinary circumstances. *Kugler v. Helfant,* supra, at 123, 95 S.Ct. 1524.

 Plaintiff has argued that the defendants' actions of requesting and securing plaintiff's arrest on three occasions without pursuing extradition and the continuance of the NCIC entry throughout this period constitutes a sufficient showing of bad faith aind harassment so as to warrant enjoining the underlying prosecution. This Court must disagree. The terms "bad faith" and "harassment" connote intentional, purposeful conduct motivated by a malicious or discriminatory purpose. *Duncan v. Perez,* 445 F.2d 557 (5th Cir.), cert. denied, 404 U.S. 940, 92 S.Ct. 282, 30 L.Ed.2d 254 (1971). Plaintiff here has not suggested any reason for the Baton

Rouge authorities to possess any personal animosity towards him, and no showing has been made that plaintiff has been singled out from other Louisiana "fugitives from justice" for the purpose of harassment. Further, since no discovery has yet been conducted, the precise identities of those responsible for initially placing the fugitive from justice entry on the NCIC are known. Thus, while the verified complaint and the affidavits on file evince a reckless and callous disregard for plaintiff's constitutional rights, nevertheless there has been an insufficient showing of the intentional bad faith or harassment necessary to come within one of the exceptions to the *Younger* doctrine. That part of plaintiff's motion which seeks an injunction restraining the pending criminal prosecution must, accordingly, be denied.

 Plaintiff's motion also seeks an order that the defendants take the fugitive from justice entry off the NCIC and not re-enter it during the pendency of this action. The *Younger* abstention doctrine does not bar federal courts from enjoining unlawful police conduct where no significant disruption of a pending criminal prosecution would result. *Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Allee v. Medrano,* 416 U.S. 802, 814, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *California Diversified Promotions, Inc. v. Musick,* 505 F.2d 278, 282 (9th Cir. 1974); *Lewis v. Kugler,* 446 F.2d 1343, 1346–1348 (3d Cir. 1971); *Bradford v. Wade,* 376 F.Supp. 45, 46 (N.D.Tex.1974). An order requiring that the defendants take the fugitive from justice entry off the NCIC and keep it off would not interfere with the underlying criminal prosecution, since now that the defendants know plaintiff's location, they can request his extradition pursuant to the Uniform Criminal Extradition Act, § 976.03, Wis.Stats. (1973). Furthermore, one of the foundations of the *Younger* doctrine is that the federal plaintiff will be able to

assert his constitutional rights in the state criminal prosecution. Here, however, plaintiff has no assurance that the defendants will ever attempt to formally extradite him and will not simply continue the NCIC entry, resulting in an arrest and detention every time plaintiff comes in contact with a police agency. Thus, if the traditional requisites for preliminary injunctive relief are satisfied, the *Younger* doctrine does not bar an order enjoining the defendants from continuing the NCIC fugitive from justice entry.

## C. *Injunctive Relief*

In *Burns v. Paddock*, 503 F.2d 18, 28 (7th Cir. 1974), the Court set forth what is required in order that a preliminary injunction issue:

> "A preliminary injunction is proper only where there is a showing that: (1) Plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the balance of hardships tilts towards plaintiffs; and (3) plaintiffs have at least a reasonable likelihood of success on the merits. * * * ."

Plaintiff has adequately established each of these prerequisites.

A core concept of the Fourth Amendment is the right to be free from arbitrary and unreasonable interference by police. *Terry v. Ohio*, 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1948); *Jenkins v. Averett*, 424 F.2d 1228, 1231–1232 (4th Cir. 1970). Repeated arrests without subsequent prosecution is a violation of this Fourth Amendment guarantee. *Marland v. Heyse*, 315 F.2d 312 (10th Cir. 1963). The fact that the defendants did not personally make the arrests of plaintiff does not extinguish their accountability, since § 1983 explicitly imposes liability on someone who *causes* a deprivation of constitutional rights.

In April 1974, the defendants were given written notice by Assistant District Attorney Gardner of plaintiff's whereabouts. They must, therefore, have decided not to extradite him. Yet because the fugitive from justice entry was left on the NCIC, it was only a matter of time until plaintiff would again be arrested because of the entry. And in October 1974, after plaintiff was arrested, jailed and finally charged with being a fugitive from justice, the defendants did not forward the necessary extradition documents. They did, however keep the fugitive from justice entry on the NCIC, resulting in plaintiff's third arrest in New York. Once again, defendants did not send the extradition papers.

These facts demonstrate that the defendants have caused plaintiff to be arrested and jailed on three occasions and have not proceeded to extradite him by the proper lawful procedures. The violation of plaintiff's rights by the capricious actions of the defendants is unquestionable.

Where there is a threat of future violations of Fourth Amendment rights, the courts have not hesitated to conclude that there is no adequate legal remedy and that an injunction must issue to prevent irreparable injury. *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938, 966, cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *Lewis v. Kugler*, 446 F.2d 1343, 1350–1351 (3d Cir. 1971); *Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir. 1969); *Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966) (en banc). While damages may be recovered for unconstitutional police and prosecutorial conduct, the remedy does not fully compensate a plaintiff nor deter future misconduct.

*Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). There is, therefore, a sufficient probability here that plaintiff will be irreparably injured by future arrests based on the NCIC entry.

The final factor in granting a preliminary injunction that must be considered is the balance of hardships. As pointed out above, defendants will not be foreclosed from prosecuting plaintiff, since they can attempt to extradite him by means of Wisconsin law. The irreparable injury to which plaintiff will be subjected in the absence of an injunction necessitates a finding that the balance of hardships is in plaintiff's favor.

It is therefore ordered that the motions to dismiss for improper venue are denied except insofar as they relate to plaintiff's claim arising in New York, to which extent they are granted.

It is further ordered that the motions to dismiss for lack of personal jurisdiction are denied.

It is further ordered that the motions of defendants Brown and Chaffin to dismiss for failure to state a claim are denied, except that the claims for damages against defendant Brown are dismissed.

It is further ordered that plaintiff's motion for an order restraining prosecution of any action which led to the NCIC entry is denied.

It is further ordered that during the pendency of this action, the defendants, their officers, agents, servants, employees, and attorneys, are:

(1) Ordered to cause the fugitive from justice entry concerning plaintiff to be removed from the NCIC system, and

(2) Restrained from entering a fugitive from justice entry concerning plaintiff on the NCIC system.