**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0022n.06
Filed: January 8, 2008

**No. 07-1155**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAMES THOMAS JONES, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and COLE, Circuit Judges; and COLLIER,[*] District Judge.

CURTIS L. COLLIER, District Judge. Appellant James Thomas Jones pleaded guilty to possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). His guilty plea was conditioned on his ability to challenge the constitutionality of his arrest. Having considered his arguments, we find there were no constitutional violations regarding his arrest and therefore affirm his conviction.

**I.      Facts and Procedural History**

The charges against appellant stemmed from a nationwide operation conducted by the United States Marshal Service, called Operation FALCON. The purpose of the operation was to apprehend fugitives residing in public housing.

---

[*] The Hon. Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

The Department of Housing and Urban Development's Office of the Inspector General had identified Appellant as a fugitive felon living in public housing (Appx. at 56). The authorities were aware of two outstanding warrants for Appellant, both issued by the Newberry, South Carolina, Police Department. The Newberry Police Department had entered those two warrants,[1] for assault and battery, into the National Crime Information Center[2] ("NCIC") database in 1998 (Appellee's Br. at 2).

Prior to the operation, Deputy Marshals confirmed the validity of the warrants by running an NCIC check which confirmed the South Carolina arrest warrants were still outstanding (Appellee's Br. at 3). Unbeknownst to the agents, Michigan law enforcement authorities had previously arrested Appellant on these warrants in 1998 (Appx. at 12). At that time, South Carolina declined to extradite Appellant because of costs, and he was released (*id.*).

On April 7, 2005, deputy U.S. Marshals and other law enforcement officers went to Appellant's apartment in a public housing complex in Detroit (Appx. at 19). The agents learned, however, Appellant lived elsewhere (Appx. at 81). Upon arrival at the correct address, the federal agents looked through a window and saw a gun lying on a coffee table (*id.*). They could also hear the sound of a television set. A DEA agent, believing Appellant was in the apartment, entered through a window and then opened the door, allowing the other agents to enter. They conducted a security sweep of the apartment and arrested Appellant when he returned home (*id.*). Appellant then made certain incriminating statements admitting ownership of the gun and possession of another (*id.*

---

[1]These warrants were for misdemeanor offenses under South Carolina law but apparently the agents erroneously thought one was a felony offense.

[2]The NCIC contains criminal history information, including outstanding arrest warrants, and is available to police departments nationwide (*id.* at 3).

at 81-82).

Appellant filed a motion to suppress both the gun and the statements made during the arrest. Appellant claimed the arrest was unreasonable under the Fourth Amendment of the United States Constitution either (1) because the Newberry police department unreasonably left an NCIC record active despite not intending to extradite or (2) because the U.S. Marshals unreasonably failed to confirm the Newberry police department would extradite even though the NCIC record indicated the Marshals should confirm extradition. At the suppression hearing, Appellant abandoned challenges to the entry into the apartment by the agents.

Appellant moved to exclude all evidence obtained from the apartment and the statements made to the arresting officers (*id*. at 10). Appellant offered no witnesses or evidence. The Government offered two witnesses at the suppression hearing who the Government represented would testify a call was made to the Newberry police and the Newberry police indicated they would extradite Appellant (Appx. at 71-72). The district court declined to hear the witnesses.

Appellant argued the Government's proffered testimony was not worthy of belief for three reasons: First, in other contacts with the Newberry police, they indicated they would not extradite Appellant (*id*. at 65). Second, the NCIC entry stated "IMMED[IATELY] CONFIRM WARRANT AND EXTRADITION" (Appellant's Br. at 4). Third, the Newberry police changed the NCIC entry after the arrest to show it would not extradite Appellant (Appx. at 62). The district court declined to decide whether the call was made, and instead focused on the stipulated evidence that established the agents had probable cause and the fact Appellant did not present any evidence which would destroy probable cause. The judge assumed arguendo the agents did not call the Newberry police, stating "this Court does not believe that failure to make that call renders the arrest unlawful." (*Id*.

3

at 74). Accordingly, the district court denied the motion to suppress, and Appellant then pleaded guilty to the first count of the indictment, reserving the right to appeal the denial of the motion to suppress (*id*. at 29, 30).

## II.     Discussion

### A.     Standard of Review

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). In this case, the district court declined to make any factual rulings so the standard of review is de novo, because there are no facts before the Court for review. The sole question of law is whether there was a violation of the Fourth Amendment. "[I]n seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

### B.     Issues on Appeal

Appellant raises three issues: (1) whether the Newberry Police Department acted in violation of the Fourth Amendment when it allowed Appellant's misdemeanor warrants to remain on the NCIC even after deciding that it would not extradite him; (2) whether the arresting federal agents violated the Fourth Amendment by failing to verify whether the Newberry Police Department would extradite Appellant for prosecution; (3) whether the district court erred when it declined to hear evidence and make a finding as to whether the arresting federal agents called the Newberry police prior to Appellant's arrest and, if so, what information was exchanged.

4

### 1.     Actions of South Carolina Authorities

Regarding the first issue, Appellant raises a novel argument, and offers no binding or persuasive authority to support it. The Fourth Amendment protects "against unreasonable searches and seizures." To prevail on a Fourth Amendment violation by the Newberry police, Appellant must show the Newberry police acted unreasonably. The touchstone of Fourth Amendment jurisprudence is always reasonableness, which "depends on [the] balance between public interest and individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977).

The Newberry police did not act unreasonably by keeping a warrant on NCIC. Even if the Newberry police were not willing to extradite Appellant from another state, there is nothing unreasonable or unconstitutional in allowing an arrest warrant to remain in NCIC. This database is used not only by states distant from South Carolina but also by adjoining states and other jurisdictions within South Carolina. South Carolina could act reasonably in foregoing the expense in extraditing a fugitive from a distant state but readily extradite that same fugitive if arrested in a nearby state. Moreover, allowing the entry to remain in NCIC would also allow jurisdictions in South Carolina to arrest Appellant if he was located there. In addition, economic conditions are subject to change. While a jurisdiction might not have the funds to extradite on one occasion, on a later occasion it might have sufficient funds to extradite. Because Newberry's actions were reasonable, there was no violation of the Fourth Amendment by keeping the warrants in NCIC.

The case Appellant uses to support his argument, *Maney v. Ratcliff,* 399 F. Supp. 760 (E.D. Wis. 1975), is inapposite. *Maney* is neither binding upon this Court nor persuasive. First, it is a civil case. There is a different scope of liability in a 42 U.S.C. § 1983 civil lawsuit than in a criminal

5

Fourth Amendment motion to suppress. Second, in *Maney*, the plaintiff was arrested repeatedly, a situation not present here. Third, since *Maney* was a civil action, the remedy was an order to remove the entries from NCIC, not to suppress evidence in a criminal case.

### 2. Actions of the Federal Agents

In his second claim, Appellant argues the arresting federal agents violated the Fourth Amendment by failing to verify both the validity of Appellant's misdemeanor warrants and whether the Newberry police would extradite Appellant from Michigan. Appellant does not argue the warrants themselves were invalid or unsupported by probable cause.

### a. Reasonableness

Appellant argues the federal agents acted unreasonably when they acted on the warrants without verifying that South Carolina authorities would extradite Appellant.

For this proposition, Appellant relies on two cases in his brief, both of which are clearly distinguishable from this situation: *Maney*, 399 F. Supp. at 760 (civil case); *Best v. State*, 817 N.E.2d 685, 687 (Ind. Ct. App. 2004) (validity of a warrant under state procedural law).

At oral argument, Appellant also relied on a case the Government cited in its letter brief. *United States v. Herring*, 492 F.3d 1212 (11th Cir. 2007). Appellant relied on this case to prove a constitutional violation occurred. However, this case does not show what Appellant needs to prove. In *Herring*, an officer of one county called officers of a second county and was informed the second county had a warrant out for the arrest of the suspect. *Herring*, 492 F.3d at 1214. The warrant, however, had been recalled, so the arresting officer had arrested the suspect on the basis of a defective warrant. *Id*. The Eleventh Circuit affirmed the denial of a motion to suppress evidence seized during the arrest based on the good faith of the police officers. *Id*. at 1218-19. In the instant

6

case, Appellants advance no argument the South Carolina warrants were invalid or unsupported by probable cause. The *Herring* Court did not articulate why the warrant had been recalled, but whatever *Herring* stands for it does not stand for the proposition that a warrant supported by probable cause is otherwise unreasonable under the Fourth Amendment where the originating jurisdiction has no intent to extradite the suspect. This is the legal proposition Appellant needed to address and prevail upon to succeed.

Appellant bears the burden of establishing some constitutional violation, but has not set forth any legal precedent which does so. In addition, there are no facts on the record which would permit this Court to consider whether the arrest was unreasonable under all of the circumstances. Appellant has not argued how the NCIC works, how it is used, the nature of the FALCON sweep, or otherwise presented evidence showing his arrest was unreasonable. Reasonableness in this context depends on "[the] balance between public interest and individual's right to personal security free from arbitrary interference by law officers." *Mimms*, 434 U.S. at 109. There has been no record built for any decision balancing the interests of the individual's right against the public interest in this case. Appellant has failed to point to any precedent which establishes the unreasonableness of the arrest and Appellant has also failed to articulate any argument for why this arrest was unreasonable within the relevant context. Therefore, we affirm the ruling of the district court.

### b. Probable Cause

Appellant also argues the arrest was made without probable cause because the NCIC entry indicated the Newberry police might not extradite. He argues, "By failing to make a confirmation telephone call, the arresting agents acted unreasonably and without probable cause in their execution of Appellant's arrest warrants." (Appellant's Br. at 16). Probable cause is defined by determining

7

"whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614-15 (6th Cir. 2007). Nowhere in this definition does the intent to extradite appear. The lack of intent to extradite may or may not render the search unreasonable, but it cannot alter whether probable cause exists to believe Appellant committed a crime in South Carolina.

### 3. Refusal of District Court to Hear Evidence

Having disposed of Appellant's first two arguments, we now address Appellant's third argument. Appellant argues the district court erred when it declined to hear evidence and make a finding on whether the agents called the Newberry police to confirm extradition on the warrants. This argument is an inaccurate representation of the record.

This Court reviews a district court's decision on whether to admit evidence at a suppression hearing for an abuse of discretion. *See United States v. Bowker*, 372 F.3d 365, 393 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005); *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002). As with other phases of trial proceedings, the district court "exercise[s] reasonable control over the mode and order of interrogating witness and presenting evidence so as to . . . avoid needless consumption of time." Fed. R. Evid. 611(a). "This rule gives the trial judge substantial discretion." *United States v. Maddox*, 944 F.2d 1223, 1229 (6th Cir. 1991).

As noted earlier, in seeking to suppress evidence for violation of a constitutional right, the burden of proof is on a defendant. *Rodriguez-Suazo*, 346 F.3d at 643. Appellant thus had the burden of demonstrating a constitutional violation. In an effort to establish the alleged constitutional violation, Appellant requested a hearing before the district court for the purpose of presenting

8

arguments and evidence. The purpose of an evidentiary hearing is to present evidence in the possession of the requesting party, not to engage in a fishing expedition. District judges are well within their discretion to curtail fishing expeditions. *See Getsy v. Mitchell*, 495 F.3d 295, 312 (6th Cir. 2007) (district judge did not abuse discretion by denying evidentiary hearing where petitioner offered conjecture but no evidence).

At the hearing, as the party with the burden of persuasion, Appellant proceeded first. He argued his arrest was unconstitutional because the Fourth Amendment requires "a purpose for the Government to arrest a defendant." Appellant also argued the federal agents had a duty to call the Newberry police to confirm the warrants before executing them.

However, other than certain stipulations, Appellant did not present any evidence to support his argument, nor did he not offer to present any evidence or otherwise indicate he had any evidence to support his arguments. Although there was at least one government agent in the courtroom who had some knowledge relevant to what had taken place, Appellant did not call this witness nor indicate any desire to call this witness. Thus, the district court never had an opportunity to deny Appellant's efforts to present witnesses because Appellant never stated a desire to present witnesses. For this reason, Appellant's argument the district court erred by refusing to hear evidence inaccurately characterizes the record.

Rather that present evidence at the hearing, Appellant merely offered the district court his speculation. "I believe that that phone call was never placed and I think there's several reasons for my position that that phone call was never placed." Correctly demonstrating a need for evidence and not speculation, the district judge specifically asked Appellant what evidence he had to show the call was not made or that the agents were told South Carolina would not extradite. (Appx. at 66-67 &

9

73).    In the face of this direct request by the district court for a representation of Appellant's evidence, Appellant failed to assert he had any evidence.  Instead, Appellant just pointed to two cases, and sidestepped the district court's request for evidence.

Later in the hearing, again making clear to Appellant he had not presented the district court with any facts or representation that such facts existed, the district judge stated, "Maybe they should have [called], they didn't.  As far as you can– *as far as the record shows*, they didn't know there would be no extradition" (emphasis added).  By this statement, the district court put Appellant on clear notice there was nothing in the record, the record Appellant had the burden to establish, to support his speculation the South Carolina authorities ever told the agents they would not extradite Appellant.  In the face of this statement Appellant chose to not tell the district court he had any evidence, and chose not to present the agent who was at the hearing, nor any other witnesses.  Appellant had ample opportunity to inform the court he had evidence, but he failed to do so.  All Appellant could furnish the district court was speculation based on assumptions and facts not known to the agents at the time of the arrest.

On this basis alone, his claim fails.  Appellant had the burden to produce evidence and he failed to do so.  Accordingly, the district court did not err.

Although not in the form of evidence, the district court also had before it a representation from the Government that present in the courtroom and prepared to testify was Agent Catinella. This representation was made in the presence of Appellant, who could have called the witness himself had he desired.  According to the Government's proffer, Agent Catinella would have testified that prior to the arrest he called the South Carolina jurisdiction and was informed South Carolina would extradite Appellant if he was arrested.  Since Appellant had put on no evidence, the district judge

10

decided he did not need to hear that evidence, and could decide the motion based upon the information before him at the time. In this decision, the district court did not err.

At no time did Appellant indicate he had any evidence to contradict the Government's proffered testimony. Rather, he hoped to call into question the agent's credibility. Even had Appellant called the agent and successfully called into question the agent's credibility, that would not have established the constitutional violation Appellant was required to show. The district court would have had to be unusually selective in its credibility determination. To find the agent knew the South Carolina authorities would not extradite, the district court would have had to believe the agent's testimony that a phone call was made, but disbelieve the agent's testimony about the content of the same call. Further, the district court would have had to not only disbelieve the agent about the call's content, but would also have had to affirmatively believe Appellant's speculative account of the content of the phone call.

Appellant never requested he be allowed to put the agent on the stand. When the Government offered to put the agent on in support of its position, Appellant did not object to the district court's refusal to hear the testimony of the agent. Nowhere in the record did Appellant request the district court put the agent on the stand.

In view of this record, it was well within the district court's discretion to refuse to hear the agent's testimony. Appellant never suggested he had any evidence demonstrating that the South Carolina authorities told the agents they would not extradite. Even now Appellant still has not indicated he has any such evidence. The only evidence the district court declined to consider was evidence offered by the opposing side and which the Government represented directly contradicted Appellant's position.

**III.	Conclusion**

For the foregoing reasons we affirm the ruling of the district court in this case.