James **BRADFORD** et al.
Richard P. Johnson, d/b/a Art Flick
Theatre (Intervenor).

v.

Henry **WADE** et al.

No. CA 3–74–370–C.

United States District Court,
N. D. Texas,
Dallas Division.

May 10, 1974.

Timothy M. Finnical, Dallas, Tex., for plaintiffs.

Bennie R. Juarez, Barry P. Helft, Dallas, Tex., for intervenor.

N. Alex Bickley, City Atty., Joseph G. Werner, Asst. City Atty., Dallas, Tex., for defendants.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiffs and Plaintiff/Intervenor have sued for injunctions under 42 U.S.

C. § 1983, 28 U.S.C. §§ 1343(3) and (4) and 28 U.S.C. §§ 2201 and 2202.

The Dallas Police Department Vice Section has made six raids at the Cinema Adult Theater, seized six copies of the film "Behind the Green Door" and four copies of the film "The Devil in Miss Jones" and arrested each of the Plaintiffs two or more times.

The Dallas Police Department Vice Section also made two raids on the Art Flick Theatre owned by Plaintiff/Intervenor, seized a copy of the film "Deep Throat" both times and arrested the person in charge of the theatre both times.[1]

Plaintiffs and Plaintiff/Intervenor were both granted temporary restraining orders by the Court and a preliminary injunction hearing was held. The Court announced its decision to grant the preliminary injunction in open court, stating its reasons for doing so in short form. It is entering this Opinion in an effort to make sure that the Court's reasoning is clear.

The very recent case of Canal Authority of the State of Florida v. Callaway[2] sets out the four prerequisites for a preliminary injunction in the Fifth Circuit. They are:

"(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest."

The Court must therefore apply these tests to the situations plead and proved by Plaintiffs and Plaintiff/Intervenor at the hearing.

## I.

The Supreme Court last June handed down a series of obscenity cases, the principal case being Miller v. California.[3] The ramifications of these cases and the present views of the Court have not been settled. Our present controversy arose out of this series of cases and one in particular, Heller v. New York.[4]

Before we proceed to the issues at hand, let us say what is not at issue, namely, the case of Younger v. Harris[5] and the line of cases under it. Plaintiffs and Plaintiff/Intervenor have not asked that a pending state court proceeding be enjoined. They have only asked for an order restraining certain local officials from proceeding in what they contend is an unconstitutional manner. They attack no state statute on its face or as applied.

█ They also stand upon First Amendment rights, and, the Supreme Court has said that: "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[6] Therefore, the principles of equity, comity and federalism do not command this Court to abstain.[7]

The first hurdle that Plaintiffs and Plaintiff/Intervenor must pass is that they must show a substantial likelihood that they will win upon the full trial.[8] In *Heller*, the Supreme Court laid down

1. Plaintiff/Intervenor, of course, cannot assert the rights of the arrested employee.

2. 489 F.2d 567 (5 Cir., Feb. 15, 1974, reh. den., reh. en banc den., April 10, 1974).

3. 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); reh. den., 414 U.S. 881, 94 S.Ct. 28, 38 L.Ed.2d 128 (1973).

4. 413 U.S. 483, 93 S.Ct. 2789, 27 L.Ed.2d 745 (1973).

5. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 669 (1971), see Duke v. State of Texas, 477 F.

2d 244 (1973) reh. den., reh. en banc den., 478 F.2d 1402 (1973), for the view of the Fifth Circuit.

6. Bantam Books v. Sullivan, 372 U.S. 58, at p. 70, 83 S.Ct. 631, at p. 639, 9 L.Ed.2d 584 (1963).

7. For a different determination under a different set of circumstances see: Inland Empire Enterprises, Inc. v. Morton, 365 F. Supp. 1014 (D.C., C.D.Cal.).

8. *Canal Authority*, supra.

a three-step procedure for use in obscenity cases.

The first step is the procuring of a warrant by the local authorities from a "neutral, detached magistrate" who has ". . . a full opportunity for independent judicial determination of probable cause prior to issuing the warrant" and who is ". . . able to 'focus searchingly on the question of obscenity.' "[9] This hearing is for the prevention of gross abuses.

Second and third, there must be available to any party a prompt judicial determination of the obscenity issue in a full adversary proceeding. In practical terms, this means that either party may demand a preliminary "motion" hearing as to obscenity and in turn a speedy full adversary hearing on the merits.

Our first real question on the merits arises out of the question of at what point can the local authorities seize other copies of the same film that has already been seized? The Supreme Court in *Heller* reaffirmed the proposition that a valid final restraint can only be imposed upon a judicial determination in a full adversary proceeding. The only purpose of seizing a film is for use as evidence. No further copies can be seized until the film is determined to be obscene by a judicial determination on the merits. The Court even said that if the exhibitor does not have another copy of the film, he is to be allowed to copy it for further showing. To not do so, would allow the administrative procedure to become a form of prior censorship.[10]

The next major question on the merits is do we have a case or controversy? Lt. Southall, head of the Dallas Police Department's Vice Section, testified at the hearing that each film seized was different from the other films seized that bore the same title in that various scenes were or were not included in the various films seized. He further testified that he believed that there were progressively more scenes shown as versions of the films were seized rather than progressively less scenes. But countering this, some of the affidavits which were presented to the magistrates in order to have them issue the warrants recited that the film viewed was the same as the film seized in a prior seizure. The Court is of the opinion that this dispute is of little moment because of other testimony of Lt. Southall. He stated flatly that as long as Plaintiffs were exhibiting films which he believed were obscene, he would repeatedly put into motion arrest and seizure proceedings. This was in response to the question of whether or not he would go back out and raid the Cinema Adult Theater again if he would not be under some form of restraint from doing so by this Court. He also testified that there were many other films being shown in Dallas that he thought were as bad as the three films in the present situation and that they had not been seized and no one had been arrested. He gave the reason that he did not have the manpower to raid all of these films.

Plaintiffs also put on the stand a Mr. Brotherton, owner of the premises occupied by the Cinema Adult Theater. Mr. Brotherton was a very reluctant witness. He owns several nightspots in Dallas and has liquor licenses for them. He testified to the effect that Lt. Southall controlled his license renewals and that he wanted to stay in the Lieutenant's good graces. He said that if Lt. Southall was unhappy with the Cinema Adult Theater being on his premises, he did not want them there. Prior to the preliminary injunction hearing, Mr. Brotherton had had a conversation with Lt. Southall who at that time was unhappy

9. *Heller, supra,* at 413 U.S. 488, 93 S.Ct. 2793, 73 L.Ed.2d 752.

10. See also Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), reh. den., 414 U.S. 881, 94 S.Ct. 27, 38 L.Ed.2d 128. In this case the Court upheld the Georgia procedure which imposed no final restraint until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court.

48

with the Cinema Adult Theater being on Mr. Brotherton's premises. The only question was who was going to get them moved out.

The Supreme Court answered our case or controversy question in the very recent case of Steffel v. Thompson.[11] The Court unanimously held that under the facts of that case there was a very real threat of prosecution of the Plaintiff and that it would be an empty gesture to have that Plaintiff get himself arrested in order to raise his First Amendment rights. The Court found that if that Plaintiff engaged in the conduct that he intended to engage in, there was little or no doubt that he would be arrested. The danger of arrest was more than a "chill", it was real.

■ In our case, Lt. Southall admitted on the witness stand that he fully intended to go out and seize the same films, if there were no restraint imposed upon him. Therefore, our Plaintiffs and Plaintiff/Intervenor are in the same position that the Plaintiff in *Steffel* was in and there is a case or controversy between Plaintiffs, Plaintiff/Intervenor and Defendant Don Byrd.[12]

■ At this point, it should be made clear that the Court has no intention to restrain Defendant Byrd, his agents and employees from obtaining search warrants and seizing films that have not been seized before. Each time that a scene is added to a film, it becomes a different film and may become obscene while the prior version was not obscene. Therefore the Court will not restrain the seizure of such new films.

## II.

■ Plaintiff's second hurdle is that he must show a substantial threat of irreparable injury. Again, the starting point again must be the heavy presumption against encumbering First Amendment rights. A movie exhibitor is said to not only be representing his own rights but those of the population at large. If he has a right to exhibit, they have a right to watch. This is not to say that there is a presumption of irreparable injury or that the burdens of going forward with the evidence and the risk of non-persuasion shift from Plaintiff, but that he does not have to make quite the showing that he would in other types of cases.

Defendant has argued that the time period in which films are shown is short and that they must strike quickly. But this cuts both ways, if the exhibitor is effectively put out of business before any finding of censorship, any adjudication of non-obscenity is a hollow victory.[13] Plaintiffs and Plaintiff/Intervenor have shown that there is a substantial threat of irreparable injury.

## III.

The third and fourth hurdles, a showing that the threatened injury to Plaintiff is greater than the harm to Defendant and that the public interest will not be disserved by the issuance of the preliminary injunction go hand in hand in the sort of case before the Court. To be repetitive, there is a heavy presumption against prior censorships. It is assumed that the public will benefit from a lack of prior censorship and the scale of justice is tipped in the favor of free expression until there is a final adjudication of obscenity. Therefore, this Court need only follow the rulings of the Supreme Court in finding that Plaintiffs have carried their burdens over hurdles three and four.

The Court realizes that its order restraining seizures and not arrests may

---

11. 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

12. There is no evidence that Henry Wade, Clarence Jones, their employees or agents have been involved in the raids against the two theaters.

13. This is not to say that the state and local governments are without effective procedures, see Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

lead to a Dombrowski v. Phister [14] situation, but it is confident that the import of that decision of the Supreme Court is clear to the parties before the Court.

Plaintiffs have been requested to submit a proposed preliminary order and trial on the merits has been set for June 7, 1974, in order to expedite the matter.

14. 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).