**James BRADFORD et al.**

v.

**Henry WADE et al.**

**No. CA 3–74–370–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 26, 1974.

Kevin J. Clancy, Dallas, Tex., for Bradford, and others.

Bennie R. Juarez, and Barry P. Helft, Dallas, Tex., for intervenor Johnson.

Henry Wade, Crim. Dist. Atty., John Tolle, Asst. Dist. Atty., Dallas, Tex., for Wade and Jones.

N. Alex Bickley, City Atty., Joseph G. Werner, Asst. City Atty., Dallas, Tex., for Don Byrd.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

The Court has previously considered this case upon an application by the plaintiff for a preliminary injunction. *See*, Bradford v. Wade, 376 F.Supp. 45 (N.D.Tex., 1974). Now it must address itself to the merits and appropriate final relief possibilities.

The Court finds and concludes that it has jurisdiction of the subject matter and the parties and that venue is proper.

Since the parties chose not to present further evidence at the trial on the merits, the facts as set out in the earlier . Opinion provide the basis for this one.

No evidence was ever adduced as to Henry Wade, District Attorney for Dallas County, Texas, Clarence O. Jones, Sheriff of Dallas County, or their agents or employees and in addition no contentions have been made that they took part in any raids on the two movie houses. They will accordingly be dismissed as defendants. This leaves Don Byrd, Chief of Police of Dallas, Texas, his agents and employees of the Dallas Police Department as the only remaining defendants.

Plaintiffs have asked for a declaratory judgment, a prohibitory injunction enjoining defendants from making further seizures and arrests, and a manda-

tory injunction ordering the return of all copies of the films seized subsequent to the seizure of the initial copy of the respective films. Plaintiff/Intervenor, Richard Johnson, d/b/a Art Flick Theatre, has asked only for a declaratory judgment.

The declaratory relief question will be treated first.

## I.

■ The first legal issue is whether or not a case or controversy has been presented to the Court. The Court believes that there has been under the Supreme Court case of Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) for the reasons stated in the earlier Opinion.

The Court also believes that its preliminary inquiry into the merits of this case based upon Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) is correct. The *Heller* case is the last of a series of recent Supreme Court opinions dealing with the constitutional procedures required of law enforcement officials before a seizure of allegedly obscene films, books or other materials does not violate the freedom of expression and of speech rights guaranteed by the First Amendment to any person exhibiting, selling or otherwise distributing them to the public.[1] *Heller* mandates a constitutional procedure to be used in seizing films for obscenity prosecutions.[2] Several of these cases

concerned the constitutional validity of what were typically referred to as "censorship statutes". Certain states, like Maryland, adopted statutes which gave a censorship board the right to prevent the selling, exhibition or distribution of materials thought to be obscene in its judgment. Individuals not submitting their films to the board for its prior approval could be convicted under associated criminal provisions. In Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the U. S. Supreme Court invalidated the Maryland movie censorship statute because it failed to provide adequate procedural safeguards against undue inhibition of protected First Amendment rights. The Supreme Court also reversed the conviction of the appellant Freedman who failed to submit the motion picture to the Maryland State Censorship Board before exhibiting it to the public. In its holding, the Supreme Court laid down three procedural guidelines for a constitutionally acceptable system of "prior restraint", a concept which allows administrative officials in certain instances to prevent the exercise of First Amendment rights of freedom of speech and expression— such as the exhibition of a movie—without first having had a final judicial determination of the obscenity issue involved.

(1) There must be assurance, "by statute or authoritative judicial construction, that the *censor*

---

1. Actually, the *Heller* opinion came out with two accompanying cases in June, 1973, Alexander v. Va., 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973) and Roaden v. Ky., 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), with *Heller* being the most complete and thought out of the three.

2. The Court in *Heller* also pointed out what its true holdings were in the cases of A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) and Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). In those cases, it held unconstitutional the seizure of mass quantities of books for the purpose of destroying them without a prior adversary hearing. The Court made clear in *Heller*

that its holding was to prevent censorship prior to a full judicial determination of obscenity. In these cases too, the issue of obscenity was triable to the judge. It is now apparent that had the police in these cases seized only single copies of the publications pursuant to a valid search and seizure warrant for the purpose of holding them as evidence for the adversary hearing determination of obscenity, there would have been no constitutional infirmity. The evil that the Court sought to eliminate in those cases was the effective prior censorship of the presumptively protected publications that was accomplished by the seizure of all copies of all publications by the police. Those situations are directly comparable to the one before the Court now.

will, within a specified brief period, either issue a license or go to court restraining showing of the film";

(2) [a]ny restraint imposed in advance of a final judicial determination on the merits must similarly be limited to *preservation of the status quo* for the shortest fixed period compatible with sound judicial resolution;

(3) and the procedure must also assure a prompt *final judicial decision* "to minimize the impact of possibly erroneous administrative action. *See, Freedman*, supra, [380 U.S.] at 58–59 [85 S. Ct. 734, 13 L.Ed.2d 649], also, United States v. Thirty-Seven Photographs, 402 U.S. 363 [91 S.Ct. 1400, 28 L.Ed.2d 822] (1971).

The *Freedman* case is important for several reasons, including the tone and safeguards it set for preserving First Amendment rights to freedom of expression. Significantly, it reaffirmed the position taken earlier by the Supreme Court in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L. Ed.2d 584, that "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional[ity]." Of course, the implications of that quote concerning "prior restraints" are many and can be variously interpreted. What exact limitations are placed upon the definition of "prior restraint" haven't been set forth totally. Yet, the context of the Supreme Court's thinking was put into perspective later on in the *Freedman* opinion when it stated the constitutional importance, a final "judicial determination in an adversary proceeding" had in guaranteeing First Amendment rights from illegal prior restraints in an obscenity dispute.

"The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." 380 U.S. 51 at 58, 85 S.Ct. 734, at 739 (1965).

Altogether, the *Freedman* case reassured everyone that the freedom of speech and expression rights did, in fact, hold a special place in American society, a place that would not be compromised except by the proper procedures of due process. The heavy presumption against prior restraints of expression without a final adjudication guarantees this right.

The *Freedman* guarantees were later reaffirmed by the Supreme Court in Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) and Blount v. Rizzi, 400 U.S. 410, 91 S. Ct. 423, 27 L.Ed.2d 498 (1971). In the *Blount* case, the Supreme Court upheld a three judge panel which declared the postmaster general's administrative scheme of censoring mail and the use of money orders found by his staff to be obscene upon initial and subsequent administrative appeal determinations, as unconstitutional. In recognizing the fatal flaw in this censorship procedure to be the failure of the statute to require the Postmaster General to obtain a prompt judicial determination of the obscenity of the mailed material, the Supreme Court paid particular attention to the fact that delays in the administration's decisions and failures to seek judicial review could in practice end up as "*final* determinations" of the obscenity issues made without the guarantees of the judicial process. See 418, 419, 91 S. Ct. 423. "Administrative censorship" of this sort has been subsequently criticized and struck down as not providing the proper form of a final judicial restraining on expression rights. *See* United States v. Thirty-Seven Photographs, 402 U.S. 363, 367, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

■ The case before the Court today involves neither a "censorship statute" nor the direct and obvious forms of "administrative censorship" declared illegal

by the Supreme Court in the *Thirty-Seven Photographs* case. What it does involve are repeated seizures of basically the same films at the same theater locations as well as the accompanying arrests by the Dallas Police Department of theater personnel responsible for exhibiting these films—all without a prior final adjudication of whether or not the films were in fact obscene.

The plaintiffs contend the police department's continued pattern of seizures and arrests can well be expected to have the effect of closing down their theaters before a "prompt judicial decision on the issue of the film's obscenity" can be made. In the short run, they simply could neither afford to continually buy new copies of the seized films nor afford the bonds set upon their arrests. If this Court had declined to preliminarily enjoin the police department's actions, it is no doubt true that the plaintiffs would have been run out of business. And along with them, their First Amendment rights.

This sort of "law enforcement" censorship cannot be tolerated under either the First Amendment or the doctrines set forth in *Heller* and the preceding cases. The multiple seizures must be condemned as unconstitutional suppressions of the plaintiffs' First Amendment rights.

The defendants' actions are not excused by reason of their needing to make seizures of the challenged films in order to preserve them as evidence for possible criminal prosecutions against the plaintiffs. The initial seizure of each separate film was all that was needed to preserve their evidence for prosecution purposes.

The exhibitors allegedly edited each film that was shown so that the later one seized was not the same as the one shown before.[3] Undoubtedly this practice of deleting portions of the film could subject the exhibitor to multiple prosecutions since Texas penal law considers each showing of an obscene film a separate offense. But the Dallas Police Department's intention, as demonstrated by Lieutenant Southall's testimony, was not to obtain as many convictions as possible. Instead they intended for their repeated seizures and arrests to act as a censoring technique which would ultimately close the theaters just before a judicial determination of obscenity. Consequently, the numerous seizures made subsequent to the initially protected ones were unnecessary, unwarranted and indefensible forms of harassment or "administrative censorship", which imposed a final restraint upon the plaintiffs' First Amendment rights without the required prior determination of obscenity.

■ In Texas, a final adjudication of a fact question like a film's obscenity can only be made in a criminal proceeding by a jury trial unless the jury is waived. Furthermore, both the Texas Constitution and the Penal Code[4] require a jury trial in cases where an individual is criminally prosecuted.[5] In the instant case, the Dallas Police Department charged several of the plaintiffs (before this Court issued a preliminary injunction) with the criminal offense of exhibiting obscene movies, interpreted under § 16.01 of the new Texas Penal Code, V.T.C.A., as constituting an unlawful use of a criminal instrument. Any person who allegedly commits such an offense is chargeable with a third degree felony and is therefore susceptible to a maximum bond setting much higher than the maximum allowed under the

---

3. Testimony at the preliminary injunction hearing showed that the Dallas Police Department initially seized copies of three films—"The Devil and Miss Jones", "Deep Throat" and "Behind the Green Door". Copies of the subsequently seized films differed from those initially seized by the police department in that portions of the later film had been deleted by theater personnel.

4. Vernon's Ann.Tex.Const. Art. 1, § 15 and Vernon's Ann.C.C.P. Art. 1.12.

5. The right to a jury trial may be waived by reason of Vernon's Ann.C.C.P. Arts. 1.13, 1.14, 1.15 and 45.24. A defendant in a Texas court is entitled to ten days for preparation for trial under Vernon's Ann.C.C.P. Art. 27.11.

prior law's misdemeanor charge. In at least one instance, a plaintiff herein had to meet a $5,000 bond.

In the present context, these Texas law rights mean that police officers and other public officials may not take actions which will amount to censorship unless a jury has determined at a trial on the merits that a particular film is obscene. That final jury determination would also save individual exhibitors from repeated criminal prosecutions.

The film industry is a peculiar one in that its commodity has only a short life span, playing anywhere from a few days to several months in a particular market. Because of the crowded condition of the criminal dockets in Dallas County, a jury case may not come to trial for many months. By the time of trial, a film may very well not be playing at the theater where one of the films was seized. This long hiatus can therefore have the effect of allowing an obscene film to run its natural life in that locality before it can be lawfully suppressed.

No doubt this factor led to the actions of the Dallas Police Department. The Department was trying to plug this procedural flaw in the Texas criminal justice system by making multiple seizures and arrests. Their obvious intention of closing up the theater was nothing more than invalid censorship accomplished by administrative acts.

Therefore, the Court will issue a declaratory judgment declaring that the Dallas Police Department may not effect multiple arrests and seizures of allegedly obscene films prior to a binding determination of the obscenity issue made in a full adversary trial proceeding.

## II.

The Court agrees with Plaintiff/Intervenor that injunctive relief is inappropriate in this case. The Court understands that prosecutions based on each of the arrests made when the various copies of the films were seized are still outstanding. There are many abstention and comity questions present when a federal court contemplates an injunction which will affect a pending state criminal proceeding (see *Steffel*, supra, for a discussion and list of pertinent citations). This Court was very careful to word its preliminary injunction so as not to include in it the raids made prior to the institution of this action. At that time the Court thought that the Plaintiffs could adequately protect their rights in any proceedings that might arise out of their arrests. The Court is still of the same mind. Plaintiffs have raised their Constitutional claim in this Court and have had it ruled upon. The Court by no means wishes to shirk its responsibilities but nevertheless firmly believes that the State Courts of Texas will apply the law as found in this forum. The equity powers of a court are extraordinary and should only be used in extraordinary situations. Plaintiffs have not shown that this case is so unusual that it requires the extraordinary remedy of a mandatory injunction to issue.

The preliminary injunction was prohibitory in nature. Its purpose, though, was different from the purpose that one would be issued for now. It was issued in order to maintain the status quo while this Court considered the contentions of the parties. The Court has now considered the various contentions and will issue its judgment affixing the rights and responsibilities of the parties. It must be remembered that the Dallas Police Department lacked legislative and judicial guidance as to what course of conduct it should or could embark upon. The Court is confident that the Dallas Police Department will follow the guidance of this Court's judgment for as long as it is in effect. It sees no need at this time for it to issue the extraordinary remedy of a prohibitory injunction since the real evil, the lack of guidance, will be remedied by the entry of the declaratory judgment.

Plaintiffs' attorneys are requested to prepare and submit appropriate form of judgment.