**Gene Carl GOODMAN et al.**

**v.**

**CITY OF DALLAS et al.**

**No. CA3–76–970–F.**

United States District Court,
N. D. Texas,
Dallas Division.

Feb. 15, 1977.

J. Mack Ausburn, San Antonio, Tex., for plaintiffs; Malcolm Dade, Richard A. Anderson, Dallas, Tex., of counsel.

Lee E. Holt, City Atty., Joseph G. Werner, Asst. City Atty., Dallas, Tex., for defendants.

ORDER AND MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

The owners and patrons of so-called adult theatres and book stores have banded to-

gether for the purpose of halting certain practices of the Dallas Police Department alleged to be violative of the First Amendment of the United States Constitution. The suit was filed on July 21, 1976 and an evidentiary hearing was held on August 6, 1976. A summary of the Plaintiffs' claims is set out below.

Plaintiff Gene C. Goodman was arrested on May 22, 1976 while working at the Continental Theatre in Dallas, Texas. He was charged with the Class B misdemeanor of exhibiting commercial obscenity.[1] Pursuant to a May 21, 1976 search warrant the film "Inside Marilyn Chambers" was seized contemporaneously with Mr. Goodman's arrest. As of the date this case was filed, no adversary hearing had been held regarding the probable cause of obscenity for this film.

Eight days later on June 30, 1976, the Continental Theatre was again visited by the Dallas Police. On this trip Plaintiff Kenneth Lehman was arrested and a second copy of the film "Inside Marilyn Chambers" was seized. In addition the police allegedly announced to the audience that this was a raid and ordered the theatre's patrons to line up and produce identification.

Mr. Green who was in the audience on June 30 testified at the hearing that he was asked to produce a driver's license and social security card. He was detained while the police officers allegedly phoned in the identification numbers to ascertain whether there were any outstanding warrants on these theatre patrons. Upon discovering that no outstanding warrants existed the patrons were told to leave the theatre.

Mr. Green further testified that he had been in the theatre approximately ten minutes when the police arrived. He said that he could not recall who sold him the ticket to gain admission.

Patrons of the Dallas Literary Shop were subject to similar detainment and inquiry

on June 2, 1976. That day agent M. D. East, a Dallas police officer with the vice control division, went to the Dallas Literary Shop, viewed three short films commonly known as peep shows and departed. Officer East returned to the Vice Control Division and drafted two applications for search warrants and presented the applications to a magistrate, the Honorable Jack Richburg, Justice of the Peace. Officer East received two search warrants authorizing the seizure of three films.

East then returned to the Dallas Literary Shop, warrants in hand, and by executing *one of the warrants* arrested Robert Algiero, a clerk in charge of the shop, and seized one of the films charging the display of commercial obscenity. In addition East lined up the customers pursuant to Art. 38.02[2] of the Texas Penal Code and required identification. Upon production of the identification East phoned in each patron's name and number to determine if there were any outstanding warrants on the detained patrons.

As you will remember, East only executed *one* of the warrants he obtained on June 2, 1976. The next day he repeated the whole procedure at the Dallas Literary Shop, this time arresting another clerk, Gary Edward Moore, seizing another film and detaining customers and requiring identification.

On June 7, 1976 an adversary hearing was held before Judge Richburg who found that there was probable cause to believe the films seized were obscene.

The facts concerning the next bit of police activity are in dispute and very little evidence was produced at the August 6, 1976 hearing in support of Plaintiffs' complaint. The Plaintiffs allege, however, that on July 6, 1976 a Dallas police officer entered The Pleasure Shoppe, an adult book store. The officer purchased a magazine

---

1. Section 43.23 Ver.Tex.Code Ann.Penal Code (1974).

2. The section reads: (a) A person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information. (b) An offense under this section is a Class C misdemeanor.

from William Jasper Andrews, an employee clerk. While remaining on the premises the officer opened the magazine, scanned its contents and immediately placed Mr. Andrews under arrest for selling and exhibiting commercially obscene material. This arrest was effected without a warrant. It is apparently a variation on Mr. Justice Stewart's famous definition of obscenity in *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964): "I know it when I see it." The Defendant officer's definition concerning obscenity here is: "I know it when I seize it."

The Plaintiffs have asked that a part of their complaint be certified as a class action. Thus, Plaintiff John Golden purports to represent all persons in Dallas County, Texas who have been subjected to having his name taken and a warrant check run while patronizing an adult book store or theatre. Furthermore, Plaintiff William Jasper Andrews purports to represent all persons in Dallas County, Texas who have been subjected to a warrantless arrest for allegedly selling and exhibiting commercially obscene materials where that arrest is effected by a police officer who is the sole initial determinant as to whether the material is obscene.

On August 17, 1976, several individuals moved to intervene in this suit and act as representative plaintiffs of the class. The motion to intervene was permitted by the Court.

An order temporarily restraining the Defendants from engaging in the complained of acts was entered by the Honorable William M. Taylor, in my absence, on July 29, 1976. Temporary restraining orders expire after ten days and consequently the Plaintiffs moved for and were granted a ten-day extension of the restraining order on August 17, 1976. That extension by now has long since lapsed and the Plaintiffs have not moved for further extensions.

On October 13, 1976, I issued an order calling for a hearing on whether or not the case should be certified as a class action. It is primarily the Plaintiffs' responsibility to seek certification as they were informed at the August 6, 1976 hearing.

The Federal Rules of Civil Procedure require that class action status be determined at the earliest practicable time and therefore in the absence of movement by the Plaintiffs, this Court took the initiative in convening proceedings on the class action question. Two days prior to the scheduled hearing, the Court was presented with an agreed order signed by the Plaintiffs' attorneys and the city attorney certifying this case as a class action. The order was entered on October 26, 1976 and the previously scheduled hearing was cancelled.

My October 13, 1976 order also called for additional briefing on a minor point raised by an ambiguity in the Plaintiffs' complaint. Plaintiffs requested an extension of the deadline for filing the brief and this extension was granted. To date, almost three months after the brief was due, no brief has been filed.

The Plaintiffs are complaining of three basic practices of the Dallas Police Force. First, they complain of the multiple seizures of movie films prior to judicial determination of obscenity and multiple arrests incident to the exhibiting of said film. Second, they complain of the practice of detaining patrons of the book stores and theatres and requiring identification. Finally, they complain of warrantless arrest of employees of adult book stores.

As to the first point, the city attorney at our hearing conceded that the multiple seizures of films and incidental arrests were not in accord with the law and apologized on behalf of the city, representing that the incidents would not reoccur. Let me just say that the City of Dallas is under a permanent injunction covering the very practice complained of here. *Bradford v. Wade,* 376 F.Supp. 45 (N.D.Tex.1974) following *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). I would warn the city officials that if this Court is informed of future violations of this injunction it will be dealt with sternly by way of civil or criminal contempt proceedings.

The law is not as clear with regard to the Plaintiffs' second contention. The Defendants claim that detention of customers and requiring identification is for the purpose of calling the patron as a witness at a future obscenity trial. Thus, Mr. Green could testify that he paid money to a ticket taker to see "Inside Marilyn Chambers." The fact is that none of these hundreds of witnesses have ever been called to testify. Indeed, they could not add any relevant information to the testimony of the arresting officer. Furthermore, the practice of calling in the names and ID numbers of the patrons to police headquarters certainly seems unrelated to the status of these individuals as witnesses of an alleged crime.

If this case were in a different procedural posture, I would find, based on the evidence before me, that no legitimate police or prosecutional function was served by detaining these individuals and requiring them to produce identification. I would also find that this practice has a "chilling effect" on the exercise of the First Amendment rights of these individuals. Finally, I would be compelled to find that these practices were intended to harass the patrons of these establishments. Such practices have no place in a free country and, indeed, are not sanctioned by the highest court of this land. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968). *See also Bee See Books, Inc. v. Leary,* 291 F.Supp. 622 (S.D.N.Y.1968).

Finally, the third and most difficult aspect of the complaint concerns the warrantless arrest of a book store clerk who is arguably exercising his First Amendment rights. Heretofore, police conduct has been restrained only by the Fourth Amendment. However, as a practical matter an arrest resembles a non-judicially imposed injunction against certain conduct and, in some instances, can wholly frustrate conduct protected by the First Amendment. Such a situation is present in this case. See Monaghan, First Amendment "Due Process", 83 Harv.L.Rev. 518, 538–39 (1970).

When the clerk of an adult book store or theatre is arrested he must lock up the business before getting locked up himself. He must phone his employer, if he can, to notify him of the situation. It will take some amount of time before the shop can be reopened. The practice of the Dallas police has been then to revisit the shop and arrest a second clerk closing the shop for an additional period of time.

These practices have several implications for the book store owner. First, his shop is closed during business hours, causing him loss of revenue. Many of these enterprises are economically marginal operations and the police may effectively put the stores out of business in this manner. Indeed, the Court was informed several months ago that the Dallas Literary Shop has gone out of business. The second ramification of these police activities for the book store owner is that it will become increasingly difficult to obtain reliable—or even unreliable—clerks. Not surprisingly many potential employees might be hesitant to take or continue in a job that subjects them to habitual arrest. Finally, even if the customers of these stores were not subject to harassment by the Dallas Police, they might be reluctant to patronize stores that were under constant threat of police action. In sum, this police practice has the effect of totally forcing an individual out of business without any adversary determination that the activities engaged in are unlawful.

Facts similar to the case at bar were presented to a three-judge court of this circuit in *Gable v. Jenkins,* 309 F.Supp. 998 (N.D.Ga.1969) (3 judge court), *aff'd,* 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970). In *Gable,* the Plaintiff owned an adult book store and had been arrested for distributing allegedly obscene material. Several books and magazines were seized incident to the arrest. Unlike the case at bar, the Plaintiff in *Gable* challenged the facial constitutionality of the Georgia statutes authorizing the arrest. The three judge court upheld the constitutionality of the statute but reiterated that "a prior adversary proceeding is constitutionally neces-

sary before the seizure of obscene material is correct." 309 F.Supp. at 1001. The Court did not squarely face whether a warrantless arrest for selling obscene material is constitutionally defective when there is no prior adversary hearing on the alleged obscene material. However, the only logical extension of that case must be that when a warrantless arrest is made for selling and exhibiting obscene material and the sole probable cause for that arrest is the law enforcement officer's determination, unaided by any prior adversary proceeding, that the material sold and displayed is obscene, that arrest is constitutionally defective.

■ I am fully cognizant that our Supreme Court has ruled that the freedom of speech and of the press, which is secured by the Constitution, does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language, and prevents the punishment of those who abuse this freedom. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). However, the Supreme Court from its inception, has been equally clear that the judicial branch—to the exclusion of all others—decides what the law is. *Marbury v. Madison,* 5 U.S (1 Cranch) 137, 2 L.Ed. 60 (1803). Thus, it is for the judicial branch to determine what is constitutionally protected speech and what speech is not so protected.

I might well end up agreeing with officer East and other members of the Dallas Police force that the material their arrest is predicated on is obscene and therefore not protected by the First Amendment. However, this decision would be reached in an adversary setting applying legal standards established by the United States Supreme Court. No matter how well intentioned the individual police officer may be, his judgment as to what is obscene, thus justifying an arrest, is no adequate substitute for the judicial procedures mandated by our constitution and evolved over almost 200 years of litigation.

Due to the procedural posture of this case, it is not necessary to determine the remedy for this constitutional defect at this time.

■ This lengthy prelude to my decision in this case is to demonstrate that there are allegations of serious constitutional deprivations and significant evidence to support these allegations. However, I am reluctantly required to dismiss the individual claims for lack of prosecution. My reasons for this action are as follows:

After much fanfare at the outset of this case, the Plaintiffs have displayed a remarkable disregard for the prosecution of this case. First, the temporary restraining order was allowed to lapse thus permitting the Defendants to reinstitute the very actions of which Plaintiffs complain. Second, the Plaintiffs completely neglected my admonition and the requirement of Rule 23 that a class action hearing be convened as soon as practicable to determine class certification. Third, a brief the Court required essential to disposition of this case was never filed even after an extension was granted. Fourth, the Court was never informed as to whether the hearing held in this case was a final hearing for preliminary injunction purposes. In fact, it had lasted only several hours and was conducted on very short notice to the Defendants. Fifth, even if it was a final hearing, no proposed findings of fact were ever submitted to the Court as required by my local rules.

Finally, even the foregoing litany would not have caused me to dismiss this case due to the seriousness of the allegations. However, an order was issued to the Plaintiffs to show cause why this case should not be dismissed for lack of prosecution. Nothing short of the Plaintiff's failure to appear at this show cause hearing would have led me to dismiss this case. The Plaintiffs did not appear.

Accordingly, I will dismiss the representative Plaintiffs from this suit for failure to prosecute. The class action aspects of this case will be retained on my docket until March 31, 1977. The Defendants are here-

by ORDERED to submit to the Court not later than February 18 a proposed form of notice to the class informing them of this ruling and advising them that any class member may be inserted as a class representative by notifying the clerk of this court not later than March 31, 1977. If no representative Plaintiff has stepped forward by that date, the class action will be dismissed without prejudice.

The Defendant is further ORDERED to publish the court approved notice to the class for two consecutive weeks in the *Dallas Times Herald* and the *Dallas Morning News*.

It is so ORDERED.