EAGLE BOOKS, INC., dba Adult Book Store, aka Ogden Books, and Hersel Richardson, Jr., Plaintiffs,

v.

Joe RITCHIE, in his official capacity as Chief of Police of Ogden, Utah, Robert L. Newey, in his official capacity as County Attorney for Weber County, Utah, A. Stephen Dirks, in his official capacity as Mayor of Ogden, Utah, Robert DeBoer, Roger Grant, John B. Arrington, Willard E. Cragun, and Glen Mecham, each in his official capacity as Ogden City Council member, and Jack Richards, in his official capacity as Corporation Counsel for the City of Ogden, Utah, Defendants.

No. NC–76–41.

United States District Court, D. Utah, N. D.

Feb. 3, 1978.

---

Arthur M. Schwartz, P. C., and Neil E. Ayervais, Denver, Colo., Stephen R. McCaughey, Salt Lake City, Utah, for plaintiffs.

Timothy W. Blackburn, Asst. Corp. Counsel, Ogden, Utah, for defendants.

ORDER REQUIRING COMPLIANCE WITH STATE STATUTES, THE RETURN OF CERTAIN COPIES OF ITEMS SEIZED PENDING HEARING, AND GRANTING INJUNCTION AGAINST FUTURE MULTIPLE–COPY SEIZURES

ALDON J. ANDERSON, Chief Judge.

This case is before the court upon plaintiff's request for injunctive relief from the actions of the defendants Joe Ritchie, Ogden City Chief of Police; Robert L. Newey, Weber County Attorney; and Stephen A. Dirks, Ogden City Mayor. Plaintiff complains that seizures of its merchandise effected by subordinate officers of the named defendants were and are violative of rights afforded under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

The plaintiff corporation operates a book store in the City of Ogden. On five separate occasions, beginning with July 21, 1976, certain police officers, (accompanied by Pro Tempore Judge L. Kent Bachman on every occasion but one), entered the book store premises, examined and seized books, magazines, and movies. On each occasion a warrant had been issued by Judge Bachman for "pornographic materials for sale and distribution and or any other material or apparatus deemed to be pornographic by the

Judge at the time of the search." Pursuant to Utah's obscenity act, Utah Code Ann. §§ 76–10–1201, et seq., the warrants indicated that the named pornographic material was, "in violation of Utah Code Annotated 1953 as amended § 76–10–1204, Search Warrant Authority Utah Code Annotated § 76–10–1209."[1] According to facts stipulated by the parties, the warrants were obtained in the following manner: A police officer would purchase a magazine from plaintiff's store; that magazine was then presented to Judge Bachman with an affidavit of the officer indicating that pornographic merchandise of a similar nature was being offered for sale at plaintiff's store. On the strength of such representation and an examination of the attached magazine, a warrant would be issued by Judge Bachman.

On all four occasions where the warrant was served with Judge Bachman accompanying the serving officers, the judge followed a procedure of making further examination of magazines, books, and films on the premises. He indicated to accompanying officers what material such on-the-spot examination revealed to be probably pornographic. Those materials were then seized by the officers. The stipulation of fact submitted by the parties indicates that the seizures were not limited to single copies of any book, magazine, or film for which Judge Bachman made the determination that probable cause existed to believe that it was pornographic.

Plaintiff now claims that under a long line of cases of the United States Supreme Court, "mass" seizures of material, regardless of whether probable cause existed for the conclusion that such materials were pornographic, are tantamount to prior judicial restraint and violative of First Amendment rights; and that Judge Bachman's on-the-spot examinations of the items were insufficient for purposes of making a "focussed" probable cause determination of obscenity vel non. Plaintiff's request for relief is for a preliminary and permanent injunction, for return of the seized materials, and issuance of a mandate to the Utah Supreme Court to recognize the Bill of Rights.[2] The parties have stipulated to the facts necessary for a full determination of plaintiff's prayer for permanent relief. Accordingly, this determination will not address the requests for preliminary relief.

Until recently, the court was faced with the question of whether it should proceed and act in the present case or whether it should abstain on the basis of the doctrine of equitable restraint as set forth in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. Because the documents on file did not provide the court with sufficient facts and information to resolve the abstention question, the court, on November 30, 1977, entered an order requesting additional information relative to the question. On December 20, 1977, defendants filed a response to the court's request in which defendants admitted that an error had been made by defendants with respect to their representations as to the nature of the proceedings pending in state court against plaintiff and withdrew their contention that this court should abstain under the Younger doctrine. Therefore, in accordance with the facts presented

1. The court finds inexplicable the reference in the search warrants to Utah Code Ann. § 76–10–1209 as authority for the issuance of the search warrants. That section does not deal with that subject. However, § 76–10–1212 does deal specifically and in detail with the procedures and authorization of search warrants in the context of the pornography law. Accordingly, the court proceeds on the assumption that the referenced authority in the search warrant issued by Judge Bachman was simply a clerical error and that the referenced authority is § 76–10–1212.

2. Plaintiff originally requested damages in excess of $500,000.00 but the prayer for money damages was dismissed by order of this court filed on December 10, 1976. The request for the mandate is in reference to the Utah Supreme Court's decision in Utah v. Phillips, 540 P.2d 936 (1975) which plaintiff claims has rendered the method of enforcing First Amendment rights in Utah through the Fourteenth Amendment somewhat uncertain. As this court has indicated to the parties in open court, however, it does not believe it proper, nor is it necessary to the decision in this case, to consider the request for such a mandate.

and defendants' withdrawal of their abstention argument, this court will exercise its jurisdiction in the present matter and proceed to the merits of the questions presented.

■ The facts show that defendants conducted five mass seizures of plaintiff's merchandise between July 21, 1976, and February 18, 1977, each resulting in the seizure of over one thousand articles. The method employed in the seizures is described in the parties' stipulation of fact: "After [Judge Bachman] viewed the material he directed the accompanying police officers to seize *every* copy of every book, magazine, and motion picture film that he, by his examination, considered pornographic." (Emphasis added.) Under Utah's pornography act and several clear and compelling United States Supreme Court rulings such multiple-copy seizures under these circumstances are manifestly improper.

Section 76–10–1212 of the Utah Code, the provision under which defendants were acting,[3] specifies the procedures necessary to effect a seizure of "material" when there is probable cause to believe the "material" is pornographic. The clear construction of the statute precludes the seizure of more than one copy of the same item. The court concludes that such a construction is controlling for three reasons: First, as a matter of statutory interpretation, there is not only no language that explicitly authorizes multiple-copy seizures, but there are certain passages of the statute which imply that such seizures are prohibited. For example, § 76–10–1212(3) provides in pertinent part that:

If the material seized is a film, and the claimant demonstrates that no other copy of the film is available to him, the court shall allow the film to be copied at the claimant's expense pending hearing.

Obviously, the statute contemplates that in some cases considerable effort is to be expended to assure that all of the materials in question are not seized so that an impermissible form of prior restraint will not result. *See, e. g., Bradford v. Wade,* 376 F.Supp. 45, 47 (N.D.Tex.1974). Second, *the clear purpose behind the seizure of any material is to provide evidence for a hearing* (provided for under the Utah statute) *for the purpose of determining whether the material is pornographic.* The statutory authority to seize one copy of any particular item sufficiently and efficiently serves this purpose. *Id.* Third, the present Utah pornography act was enacted in 1975 against the backdrop of several United States Supreme Court decisions which allow the seizure of a single copy only of alleged pornographic material to preserve it as evidence in a pornography proceeding, but prohibit mass seizures of such materials on the grounds that such would operate as an unconstitutional prior restraint. *E. g., Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Otherwise, as the decision points out, the search and seizure procedures, applied in the manner set out, lack the safeguards to nonobscene material which the Due Process clause of the Fourteenth Amendment requires to prevent erosion of the constitutional guarantees of freedom of speech and press. Therefore, the Utah statute, *the constitutionality of which is not called into question,* must be construed in conformity with the standards

---

3. See note 2 *supra* and accompanying text. The section provides in part that:

(1) An affidavit for a search warrant shall be filed with the magistrate describing with specificity the material sought to be seized. Where practical, *the material* alleged to be pornographic shall be attached to the affidavit for search warrant so as to afford the magistrate the opportunity to examine this material.

(2) Upon the filing of an affidavit for a search warrant, the magistrate shall determine, *by examination of the material sought*

to be seized if attached, by examination of the affidavit describing the material, or by such other manner or means that he deems necessary, whether probable cause exists to believe that the material is pornographic and whether probable cause exists for the immediate issuance of a search warrant. Upon making this determination, he shall issue a search warrant ordering *the seizure of the material described in the affidavit* for a search warrant according to the provisions of the Utah Rules of Criminal Procedure. (Emphasis added.)

enunciated by the Supreme Court of the United States.

Consequently, in view of the compelling precedent thus established by the Supreme Court of the United States, and the restrictions of the statutes of the State of Utah, which must be construed in connection therewith, only one copy of each item seized may be held as evidence for the statutory hearing. Any additional copies taken, since they are not permitted by law, and are not necessary for the hearing, would, in the language of the Supreme Court, "block [the] distribution or exhibition [of the materials which] . . . is a very different matter from seizing a single copy of a film [a book] for the *bona fide* purpose of preserving it as evidence in a criminal [or civil] proceeding . . .." *Heller v. New York,* 413 U.S. 483, 492, 93 S.Ct. 2789, 2794, 37 L.Ed.2d 745 (1973). "[T]here is no doubt that an effective restraint—indeed the most effective restraint possible—was imposed prior to hearing on the circulation of the [materials] in this case, because all copies on which the police could lay their hands were physically removed from . . . the premises of [plaintiff]." *Marcus v. Search Warrant, supra,* 367 U.S. at 736, 81 S.Ct. at 1718. The prior restraint effected by the mass seizures in the present case is thus constitutionally impermissible. See *Heller v. New York, supra; A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Marcus v. Search Warrant, supra; Bradford v. Wade, supra.* Thus, plaintiff is entitled to the return of any extra copies of items seized under the statute in question. Said copies may not be acted against under the statute until a hearing is held and a determination is made the copy retained is pornographic.

The remaining question is whether as plaintiff claims the defendants must return *all* seized articles or whether they may legally keep *one* copy of each title of all books, magazines and films seized for use as evidence in proceedings against plaintiff under the Utah statute. The resolution of this question turns on the validity and sufficiency, under the statute, of the procedures employed by defendants, and Judge Bachman's determination of probable cause with regard to the obscenity *vel non* of the seized materials. According to the stipulation of fact,

In [each of the five seizures], the following procedure [was] utilized by the Defendants in effecting a mass taking of merchandise.

(a) A member of Defendant police department purchase[d] a magazine;

(b) The magazine [was] taken to a magistrate and [was] presented along with an affidavit in which a police officer state[d] his conclusion that pornographic merchandise of a similar nature [was] being offered for sale. . . .

(c) In all instances, except the December 24, 1976 search and seizure, a judge . . . accompanied Defendant's officers to Plaintiff's bookstore and . . . made on-the-spot determinations as to the obscenity *vel non* of the store's contents;

As is more fully described and discussed below, upon his arrival at plaintiff's premises, Judge Bachman viewed and examined various articles of merchandise on the plaintiff's premises and ordered the seizure of those materials which he considered to be pornographic. Plaintiff claims that this procedure does not allow the retention by defendants of any copy of the various materials because the search for and seizure of the materials were unconstitutional in that: (1) Judge Bachman was not a "neutral, detached magistrate;" and (2) even if Judge Bachman were a proper magistrate, ". . . he failed in his constitutional duty to make a 'focussing search' on the probable obscenity of each film, magazine and book seized." Plaintiff's *"Brief in Support of Complaint for Preliminary and Permanent Injunction,"* at 11. See *Heller v. New York, supra* 413 U.S. at 488–89, 93 S.Ct. 2789.

First, with respect to the requirement of a "neutral, detached magistrate," the court finds that Judge Bachman was acting as such a magistrate at the time of the seizures in question. At the outset,

plaintiff suggests that there is some question as to whether Judge Bachman was acting as a judicial officer at all at the time he examined the items seized. Plaintiff argues that the powers of a judge pro tempore are limited, that such a judge can act only when both parties to a dispute agree, and that no such agreement occurred in the present case. This contention requires an analysis of the authority for and use of judges pro tempore in Utah's city courts.

It is clear that in Utah judges pro tempore may be appointed and utilized in various circumstances. On the District Court level, for example, a judge pro tempore who otherwise meets the qualifications for the office may sit in a matter to be *tried* in the District Court upon agreement by the parties to the action or their attorneys of record. *Utah Const.* art. 8, § 5; Utah Code Ann. §§ 78–3–15 and 16. And, in the City Court system, judges pro tempore may try a criminal case where the defendant is entitled to a change of judge and, among other things, the parties agree upon a judge pro tempore for the trial. Utah Code Ann. §§ 78–4–24 to 26. The above provisions do not cover the present situation, however, because the involvement of Judge Bachman in the present action occurred *not* in the trial of the matter in connection with a change of judge, but in a routine procedure preliminary to any formal adversary proceedings involving the present parties. The question thus becomes whether city judges pro tempore may properly be used in the manner indicated, such as providing the preliminary magistrate assistance in the search and seizure in the instant action.

As part of its request for additional information of November 30, 1977, the court inquired of the parties regarding the facts surrounding and authority supporting Judge Bachman's appointment as judge pro tempore. Defendants' response to the request shows that Judge Bachman was appointed as judge pro tempore by the Ogden City council pursuant to Utah Code Ann. § 78–4–11 by Resolution No. 1042–76 to serve for the year of 1977, and by Resolution No. 977–76 to serve for the year of 1976. Both resolutions indicate that Judge Bachman was only one of several judges pro tempore that were appointed by the City of Ogden. The Utah provision expressly relied upon by the City of Ogden in appointing judges pro tempore is a provision distinct from and in addition to the above-referenced provisions permitting parties to agree to having a city court criminal matter tried before a judge pro tempore where a change of judge occurs. The statute provides in pertinent part as follows:

> During the absence of the city judge from the city, or in case of his sickness or inability to act, the mayor shall have power to appoint, by and with the consent of the city commissioners or city council, a judge pro tempore during such absence, sickness or inability to act, and the judge pro tempore so appointed shall possess all the qualifications required of the city judge and shall be vested with the same powers and authority.

Utah Code Ann. § 78–4–11.

It appears that Ogden City appoints an entire group of judges pro tempore in one official action and then assigns a particular judge from that group to act whenever and wherever a city judge is needed and when a regularly appointed city judge is not available or otherwise indisposed in the manner the statute indicates. Defendants have informed the court that the judges pro tempore are used in this manner on a regular basis when city judges are on vacation, are ill, attend seminars, disqualify themselves, etc. Section 78–4–11 specifically provides that city judges pro tempore acting pursuant to § 78–4–11 "shall be vested with the same powers and authority" as regularly appointed city court judges, which powers include the "powers and jurisdiction of a magistrate." Utah Code Ann. § 78–4–16.

The court feels that a reasonable construction of § 78–4–11 may authorize the practice of the City of Ogden in appointing and using judges pro tempore in the manner indicated, and notes that plaintiff has cited no authority, made no showing or advanced any argument that the city's practice pursuant to § 78–4–11 generally, or

that the appointment of Judge Bachman in particular, is or was unauthorized or improper. Moreover, the court feels that great weight should be given to the widespread practice of Ogden (and of other Utah cities) in this regard. The practice apparently has been born of necessity and prudence and has heretofore gone unchallenged. Thus, the court concludes that for the present purposes Judge Bachman was acting as a proper judicial officer at the times in question.

■ Also, the court finds that Judge Bachman was a "neutral, detached magistrate" as that term has been defined by Supreme Court rulings. In its original complaint plaintiff refers to Judge Bachman "as an arm of law enforcement" and claims that the judge's accompanying the police officers to plaintiff's premises and the actions directed and sanctioned by him ". . . lend a mockery to the judicial system and are not calculated to provide Plaintiff with the dignity of a free, open, fair and impartial hearing." *Plaintiff's Complaint for Preliminary and Permanent Injunction* at 4–5. The response to this court's request for additional information, however, shows that Judge Bachman was employed in the private practice of law and that he was involved in the seizures just as any city judge or judge pro tempore would have been involved. There are no facts in the record which would tend to show that Judge Bachman had any special interest in the matters in question, or any obligation to the city or any agencies thereof, above that of his duty as a judge pro tempore that would in any way impugn Judge Bachman or the actions taken and the role played by him. In other words, despite the strong allegations of plaintiff, it does not appear that Judge Bachman was an "arm of law enforcement" in the sense implied, or that he was acting in a manner inherently inconsistent with his judicial capacity. Furthermore, the mere fact that he accompanied the police officers to plaintiff's business and acted in their presence does not give weight or credence to plaintiff's assertions. For example, in *Heller v. New York, supra,* a case heavily relied upon by plaintiff, upon the request of an assistant district attorney, a judge accompanied a police inspector to a theatre where an allegedly obscene film was playing and there signed a search warrant and directed the seizure of the film and the arrest of various of the theatre's employees. Nevertheless, the Supreme Court upheld the procedure as meeting the proper constitutional standards.

■ Second, with regard to the requirement of a "focussing search," the court concludes that the facts in the present action are clearly distinguishable from those circumstances where the Supreme Court has held that an adequate search was not conducted, and demonstrate that Judge Bachman was afforded an opportunity ". . . to focus searchingly on the question of obscenity." *Marcus v. Search Warrant, supra* 367 U.S. at 732, 81 S.Ct. at 1716. The landmark case of *Marcus* is the source of the term "focussing search," and a reading of that case and those following it reveals that the concern of the "focussing search" concept is the so-called general warrant that issues upon an insufficient factual basis and thus provides the executing non-judicial officers unlimited discretion in the execution of the warrant. *See also Stanford v. Texas,* 379 U.S. 476, 484–86, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

In *Marcus,* for example, a police officer filed complaints in the state circuit court in which he stated that "of his own knowledge" the relevant establishments against which the warrants were to issue, "kept for the purpose of [sale] . . . obscene . . . publications . . . ." No copies of any of the alleged obscene materials were filed with the complaints or shown to the circuit judge. The judge then issued search warrants ". . . authorizing, as to the premises of the appellant named in each, 'any peace officer in the State . . . [to] search the said premises . . . and . . . seize . . . [obscene materials] and take same into your possession . . . .'" 367 U.S. at 722, 81 S.Ct. at 1711. (Brackets and bracketed material in original.) The pertinent constitutional

ground upon which the warrant and resulting seizures were challenged was that the procedure ". . . allowed *police officers* and *deputy sheriffs* to decide and make a *judicial* determination . . . as to which . . . magazines were . . . obscene . . . and were subject to seizure . . . ." *Id.* at 724, 81 S.Ct. at 1712 (emphasis added). Holding that the procedures violated constitutional standards, the Court emphasized that the ". . . warrants gave the broadest discretion to the executing officers . . . and left to the individual judgment of each of the many police officers involved the selection of such magazines as in his view constituted 'obscene . . . publications.'" *Id.* at 732, 81 S.Ct. at 1716. The "*ad hoc* decisions" of the officers were ". . . made with little opportunity for reflection and deliberation." *Id.* In summarizing the fundamental flaw in the procedure, the Court then used the language upon which plaintiff so heavily relies: "[The police officers] were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity." *Id.*

■ The procedures employed in the instant case differ markedly. As stated in that portion of the stipulation of fact quoted earlier, in each instance but one, Judge Bachman was presented with an affidavit and a copy of a particular magazine for his examination that was felt by a police officer to be obscene. The respective affidavit contained a statement that "merchandise of a similar nature" was being offered for sale at plaintiff's establishment. Judge Bachman then accompanied the city's police officers to plaintiff's store where he himself, rather than the police officers, examined the various items which eventually were ordered seized. That the warrant issued upon probable cause and the judicial officer himself examined the balance of the seized materials, of course, satisfies the primary rationale and purpose of *Marcus* and its progeny. A *judicial* determination as to the probable obscenity of the merchandise was made and there was no unbridled discretion

given to the executing officers. Although each item that was ultimately seized was not described with particularity *before* Judge Bachman and the police arrived at plaintiff's business, it appears that sufficient formalities were observed during the examination and that a proper service was made and then there was filed a return of the warrant indicating the authority of the judge and the seizures made, and describing and listing every item that was seized. The facts of the present action are quite unique, but a fair reading of *Marcus* and *Heller* lead one to the conclusion that the procedure 'in question passes constitutional muster. It also follows from the above, however, that the seizure in which no judicial officer participated, that of December 24, 1976, was constitutionally infirm because the procedure thus had all the hallmarks of the prohibited general warrant and seizures involving the unbridled discretion of non-judicial officers. Thus, all of the materials seized on that occasion must be returned to plaintiff.

In relation to its argument that Judge Bachman did not make a focusing search of the seized materials, plaintiff stresses the shortness of time spent by him in his examinations prior to the seizure of the items. It is argued that the cursory inspections made by Judge Bachman were insufficient to enable him to make a determination that the subject materials were probably pornographic. Judge Bachman's examination of the materials on plaintiff's premises is described in the stipulation of fact as follows:

1. He judged motion picture films contained in closed packages by the cover on that particular package, or, if they were the same film he viewed in the booth.

2. He viewed all motion picture film located in motion picture vending machines, which films run approximately 12–14 minutes in length, for a period of approximately 10–15 seconds, or, until he determined that the material was pornographic.

3. He directed the seizure of pocket novels primarily based on his visual in-

spection of the covers without ever having read all or part of the contents.

4. Before ordering the seizure of a magazine, he would thumb through it for a period of approximately 15–20 seconds, or, until he determined that material was pornographic.

. . . . .

6. Judge Bachman averaged approximately four hours viewing the material seized.

Again, the parties have cited no authority that would result in a definitive disposition of this aspect of the case. It would appear, however, making allowance for the pragmatic limitations of the circumstances Judge Bachman had adequate ". . . opportunity for reflection and deliberation." *Marcus v. Search Warrant, supra* at 732, 81 S.Ct. 1708. This court cannot say that Judge Bachman's brief view of portions of the films and magazines seized, or perusal of the pictures and other material on the covers of the paperback books or film packages, could not, in the exercise of common sense, provide the basis for a determination that a particular item was probably obscene and was sufficient to justify holding one copy for a hearing to determine judicially the same.

It is reasonable to conclude that those attempting to induce the purchase of a paperback book or a movie would place on the cover and within the same scenes and verbal representations of the essential nature and tenor of the item. If the one seeking to sell such material places on the cover as the quintessence of the book or film that which appears to be pornographic, it may logically be concluded that the contents are of like nature. Likewise, if a twenty-second portion of a fifteen-minute film is viewed and a reasonable mind may conclude therefrom that the material is probably pornographic, sufficient probable cause would be established, at least sufficient, as noted above, to seize one copy to hold for a hearing to determine if it *is* legally pornographic.

The essence of *Marcus*, and the touchstone in the area of the search for and seizure of materials entitled to the benefit of a presumption of First Amendment protection, is that procedures leading to the issuance and execution of warrants dealing with such materials must adequately avoid suppression of the materials entitled to such a presumption. Having fully and carefully considered the facts and authorities set forth in the present action, the court is of the opinion that the procedures, with the exception of the multiple-copy aspect of the seizures, discussed herein and employed in connection with four of the five seizures, did adequately avoid the suppression of presumptively protected material. It follows that defendants may retain single copies of all items seized where the judge was present and hold the same as evidence for the statutory hearing.

Based on the foregoing, IT IS HEREBY ADJUDGED AND ORDERED that:

1. The defendants may retain all single copies obtained from the searches and seizures effected in the company of Judge Bachman. This is conditioned upon the prompt holding of proceedings against the plaintiff pursuant to Utah Code Ann. §§ 76–10–1201 *et seq.* in which the obscenity *vel non* of the seized materials may be determined.

2. The defendants shall return the extra copies of all books, magazines and films heretofore described in the pleadings as seized from plaintiff.

3. The defendants shall return all copies of books, magazines, and films seized from plaintiff on the occasion when the officers alone made on-the-spot examinations and seizures of materials.

4. Prospectively, defendants are enjoined from making any future such multiple-copy seizures as described in the court's opinion as unlawful.

5. In the event that only a single copy of a film or any particular item is available, and if defendants desire to keep the same as evidence for the hearing, plaintiff shall be afforded an opportunity to copy the same at plaintiff's expense.

6. All other requests for relief by plaintiff, including a request for a mandate to the Supreme Court of the State of Utah, are denied.